KILDARE LUMBER COMPANY ET AL. V. ATLANTA BANK.

No. 552.—Decided June 7, 1897.

**1   Attachment—Contingent Liability—Drawer and Acceptor.**

Attachment will only lie upon a debt or demand which is absolute, not contingent; and of the latter character is the liability of the drawer of an accepted bill not yet due.  (Pp. 98, 99.)

**2.   Same—Statutes Construed.**

Revised Statutes, art. 189, in connection with art. 186, authorizes attachment for a subsisting, not for a contingent, demand.   Art. 312, Rev. Stats., in authorizing suits against parties not primarily liable, means parties who have already become secondarily liable, not those who may become liable on the happening of some contingencies; and neither these nor articles 1203 and 1204 change the rule of the commercial law which makes the liability of the drawer of a bill, which has been accepted, contingent upon the failure of the acceptor to pay at maturity.  (Pp. 99, 100.)

**3.   Attachment—Drawer of Bill—Accommodation Acceptor.**

In case of an accommodation acceptance, while the payee need not notify the drawer of a failure to pay (the latter being ultimately liable and without recourse on the acceptor) and while he may discharge the acceptor without discharging the drawer (reversing the rule in other cases), the drawer being in such cases the princi-

pal and the acceptor a surety as between themselves,—still, as between the payee and the drawer and accommodation acceptor, the liability of the latter continues absolute and that of the former is contingent and will not support an attachment. (P. 102.)

**4. Pleading—Accommodation Acceptance.**
See facts alleged, which were held not to amount to an allegation that an acceptance of a bill by the drawee was for the accommodation of the drawer. (P. 101.)

**5. Attachment—Affidavit—Injuring Defendants.**
An affidavit for attachment against more than one defendant should negative a purpose of injuring or harassing defendants or either of them. (Perrill v. Kaufman, 72 Texas, 214, limited.) (P. 103.)

**6. Case Approved.**
The rulings of the Court of Civil Appeals as to the liability of defendants in this case approved. (P. 103.)

**7. Attachment—Dissolution—Vacating Bond.**
The purpose of the amendment of art. 182, Rev. Stats. (1879), by the act of 1891 (Rev. Stats., 1895, art. 216), was to preserve the status of the property or fund when the attachment was quashed, so as to give the plaintiff a remedy for the correction of error in such ruling. It was not intended by the provision making a replevy bond previously given "as valid and binding as if such attachment had never been quashed" to make a bond valid which was before invalid. Where an attachment of property replevied by defendant is quashed the bond should be discharged. (Pp. 103 to 105.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Cass County.

*F. H. Prendergast,* for plaintiff in error.—The court erred in overruling the motion to quash the attachment made by the Kildare Lumber Company, because the claim against the Kildare Lumber Company, at the date the attachment was sued out, was a conditional obligation and resting on a contingency, and was not such a claim, at that date, as would support an attachment, and was not then due. Story, Bills, secs. 107, 268; Yale v. Ward, 30 Texas, 23; 1 Wade on Attachment, secs. 17, 162; Drake, Attachment, secs. 24, 25, 26; 1 Am. and Eng. Ency. Law, 896; Byles on Bills [153], and side pages 2 and 3; Brown v. Wyatt, 72 Texas, 60; Jacobs v. Daugherty, 78 Texas, 683; Waples, Attachment, 434; El Paso Bank v. Fuchs, 89 Texas, 197; Bank v. Mixter, 124 U. S., 721; New York Security Co. v. Lombard Co., 73 Fed. Rep., 551; Bank v. Moss, 6 So. Rep. (La.), 25; Claflin v. Feibleman, 10 So. Rep. (La.), 862.

The court erred in not quashing the attachment, because the affidavit did not state that the attachment is not sued out for the purpose of injuring or harassing either of the defendants. Moody v. Levy, 58 Texas, 533; Perrill v. Kaufman, 72 Texas, 215.

The Kildare Lumber Company being a corporation, and having filed a sworn plea that the drafts were drawn without any authority, the burden was on plaintiff to prove that the drafts were drawn by authority, and there being no such proof, judgment should not have been rendered for plaintiff.

To make a draft a binding obligation on the drawer, there must be proof of protest and notice or suit against the acceptor to the first term

of court.   Cole v. Wintercost, 12 Texas, 120; Fisher v. Phelps, 21 Texas, 555; Earnest v. Taylor, 25 Tex. Supp., 39.

The court erred in rendering judgment for the plaintiff against the Kildare Lumber Company, because it had filed a sworn plea that the drafts sued on were executed beyond the power and authority of said Kildare Lumber Company, and ultra vires and void; and there was no evidence that said company had authority to execute said drafts, or had any power under their charter to do so.

The court erred in rendering judgment against the sureties on the replevy bond, because the attachment against the Kildare Lumber Company was void and sued out without any authority of law.

*Howard O'Neal* and *O'Neal & Allday*, for defendant in error.—The cause of action in this case having arisen against the Bemis Lumber Company, the principal, under the statute, art. 270, Sayles' Civ. Stats., the drawer, the Kildare Lumber Company, was properly joined in the suit.   Sayles' Civ. Stats., arts. 155, 262, 270, 1208; Smith v. Pickham, 8 Texas Civ. App., 326; Drake, Attachments (6th ed.), 31; 7 Lawson, Rights, Remedies and Practice, 5484, sec. 3508.

The defendant, the Kildare Lumber Company, replevied the property attached before any motion was made to quash the attachment proceedings, and that was a waiver of any defect in the attachment proceedings if any there was.   Acts of 1891, p. 29; Rev. Stats., 1895, art. 216.

The affidavit for attachment stated that it was not sued out for the purpose of injuring or harassing the said defendants.   This was sufficient to show that the attachment was not sued out to injure or harass either of the defendants.   Perrill v. Kaufman, 72 Texas, 214.

The court did not err in rendering judgment for the plaintiff against the Kildare Lumber Company because the plaintiffs sued upon certain bills of exchange purporting to be issued by the Kildare Lumber Company, and there was no sworn plea by the defendants that the drafts sued on were not executed by the Kildare Lumber Company.   Sayles' Civ. Stats., art. 2262; Drew v. Harrison, 12 Texas, 279; City Water Works v. White, 61 Texas, 536.

If the plea had been properly sworn to, it only undertook to impeach the consideration of the bills and would only have the effect of putting the consideration of the bills in issue.   1 Sayles' Civ. Stats., art. 1265; Newton v. Newton, 77 Texas, 508; Railway v. Hughes, 31 S. W. Rep., 411.

The plea of ultra vires was not sworn to, and if it had been the only effect of the plea would have been to put in issue the consideration of the bills.   Newton v. Newton, 77 Texas, 508; 1 Sayles' Civ. Stats., 1265.

The court did not err in rendering judgment against the sureties on the replevy bonds because the bonds were statutory bonds.   Sayles' Civ. Stats., art. 170; Peters S. Co. v. Schoelkopf, 71 Texas, 418; Elser v. Graber, 69 Texas, 222.

*O'Neal & Culberson* and *Hogg & Robertson,* also for defendant in error.

GAINES, CHIEF JUSTICE.—The defendants in error, a partnership doing a private banking business under the name of The Atlanta Bank, sued out writs of attachment against the Kildare Lumber Company, a corporation, as drawer, and the Bemis Lumber Company, another corporation, as the acceptor of three bills of exchange not then due, and attached a lot of lumber as the property of the drawer.

The Kildare Lumber Company replevied the property and W. B. Ward, one of plaintiffs in error, became a surety on its replevy bond.

A motion to quash the attachment was filed, but was overruled, and the trial resulted in a judgment for the plaintiff against both defendants and against the sureties on the replevy bond. The judgment was affirmed in the Court of Civil Appeals.

The grounds upon which the motion to quash the attachment was based were: 1. That an attachment could not lawfully issue against the drawer of a draft before it fell due; and 2. That the affidavit filed in order to procure the writ was defective.

The first question is, can the holder of a bill of exchange legally attach the property of the drawer before the maturity of the draft? Save by the custom of London, the writ of attachment was unknown to the common law. The right to procure its issue under certain states of facts and by a compliance with certain requirements has been given by statutes in nearly all the States of this Union. But it is universally regarded as a harsh remedy; and it is generally held, that a compliance with the requisites of the statute is essential to the validity of the writ. The statutes usually define, either in general or specific terms, the nature of the demand upon which the remedy is allowed; and it cannot be extended to other cases. This principle was recognized in this court in the case of Hochstadler v. Sam, 73 Texas, 315, in which it was held, that an attachment can not lawfully issue even in an action for a debt, where the damages are unliquidated, and the cause of action is such as that there is no definite means of their ascertainment. The principle upon which the decision rests is, that the plaintiff must make oath as to the indebtedness and the amount and that he can not properly do this where the amount is not fixed or capable of definite ascertainment by some legal rule. Again, in the case of Brown v. Wyatt, 72 Texas, 60, it is recognized that in order to support an attachment the indebtedness must be absolute and not contingent. With possibly one exception, the rule has been applied, so far as we can ascertain, in every jurisdiction in which the question has arisen and in which the right of attachment exists for the securing of debts, whether due or not due. Moore v. Dickerson, 44 Ala., 485; Monroe v. Bishop, 29 Ga., 159; Henderson v. Thornton, 37 Miss., 448; Ellis v. Harrison (Mo.), 16 S. W. Rep., 198; Black v. Zacharie, 3 How. (U. S.), 510; Claflin v. Feibelman, 44 La. Ann., 518;

Denegre v. Milne, 10 La. Ann., 324; Bank v. Moss (La.), 6 So.
Rep., 25.

Judge Story, after showing the respective liabilities of the drawer and
the acceptor of a bill of exchange, says: "It is obvious, from this state-
ment, that, while the contract of the acceptor is absolute, that of the
drawer and indorsers is conditional." Story on Bills, sec. 323. Again,
Mr. Justice Bayley, himself the author of a well known treatise on Bills
of Exchange, in his advisory opinion in the case of Rowe v. Young, in
the House of Lords, says: "The acceptor is, by the law and custom of
merchants, considered as the principal debtor; the drawer and indorser
as sureties only, liable on his default, and not otherwise. His engage-
ment is general, that he will pay; that of the drawer and indorsers is con-
ditional, namely, that if due diligence be used, they will pay, if the ac-
ceptor does not." 2 Bligh, H. L., 467. Accordingly it is distinctly
held by the Supreme Court of Louisiana in the cases of Denegre v. Milne
and of Bank v. Moss, above cited, that the holder of a draft cannot pro-
ceed by attachment against the drawer before its maturity. In Louisiana,
as in this State, an attachment may issue upon a debt not due. See,
Statute of Louisiana, in appendix to Drake on Attachment. The ex-
ception to which we have referred is the case of Smead v. Chris-
field, 1 Handy, 442, from an inferior court in Ohio, the report of which
is not accessible to us. It holds that under the code of that State an
indorser may be attached before the maturity of the note. From the
brief mention of the decision in the text books we presume the ruling
was controlled by the special provisions of the Ohio statute. If not, it
is conflict with the well considered case of Claflin v. Feibelman Co.,
above cited, in which it is held in an able opinion that the property of
an indorser can not be attached before the maturity of the paper.

But it is urged that attachment of the property of the Kildare Lum-
ber Company before the maturity of the bill was authorized by our stat-
utes. Article 189, of our Revised Statutes provides, that an attachment
may issue, "although the plaintiff's debt or demand be not due"; and
from this it is argued, that there need not be a subsisting debt. The
contention is, that "demand" is a broader term than "debt." This is
doubtless true, but it does not relieve us from the difficulty. If an at-
tachment could not issue for a contingent debt, how could it issue for a
conditional demand? But our statutes have never beeen construed as
authorizing an attachment for any demand save a liability growing out
of a contract the amount of which is capable of being definitely ascer-
tained. Hochstadler v. Sam, supra. For many causes of action arising
from a breach of contract the action of debt would not lie at common
law, and therefore the more comprehensive term "demand" was prob-
ably inserted in the statute, so as to embrace contract liabilities which
could only be prosecuted at common law in the action of assumpsit. To
give the word "demand" any other construction is to lose sight of the
provision contained in article 186 of the Revised Statutes, which pre-
scribes as one of the prerequisites of an attachment that an affidavit

shall be made "stating that the defendant is justly indebted to the plaint-iff and the amount of the demand." This implies that there must be an existing indebtedness, and that it must be so far liquidated that the plaintiff may in good conscience make oath to the amount.

But arts. 312, 1203 and 1204, Rev. Stats., are also relied upon as au-thorizing the attachment in this case. These articles are as follows:

"Art. 312. Assignors, indorsers, and other parties not primarily liable upon any of the instruments named in this title, may be jointly sued with their principal obligors, or may be sued alone in the cases provided for in articles 1203 and 1204."

"Art. 1203. The acceptor of any bill of exchange, or any other principal obligor in any contract, may be sued either alone or jointly with any other party who may be liable thereon; but no judgment shall be rendered against such other party not primarily liable on such bill or other contract, unless judgment shall have been previously, or shall be at the same time, rendered against such acceptor or other principal obligor, except where the plaintiff may discontinue his suit against such principal obligor as hereinafter provided."

"Art. 1204. The assignor, indorser, guarantor and surety upon any contract, and the drawer of any bill which has been accepted, may be sued without the necessity of previously or at the same time suing the maker, acceptor or other principal obligor, when he resides beyond the limits of the State, or in such part of the same that he cannot be reached by the ordinary process of law, or when his residence is un-known and cannot be ascertained by the use of reasonable diligence, or when he is dead, or actually or notoriously insolvent. * * * "

At common law the liability of the acceptor, the drawer and the endorser of a bill of exchange and of the maker and endorser of a prom-issory note were several and not joint, and hence, while they might be sued at the same time in separate actions, they could not be proceeded against in the same suit. Chitty on Bills, 538; 2 Daniel, Neg. Instru-ments, sec. 1203; Fawcett v. Fell, 77 Pa. St., 308; Regester v. Cas-person, 3 Har. (Del.), 289.

The purpose of the statutes noted above was to abolish the technical rule of the common law, and to enable the holder of negotiable paper to sue all parties liable thereon in one suit. When we adopted the com-mon law we adopted, in lieu of the practice of the common-law courts, one based upon the broader principles of the equity procedure; and it has ever been the aim of our Legislatures and courts to permit and to encourage the adjudication of all controversies growing out of the same transaction in one suit. This was clearly the purpose of article 312, and nothing more. "Parties not primarily liable" mean parties who have already become secondarily liable, and not such as may become liable upon the happening of some contingencies. Articles 1203 and 1204 speak for themselves, and it is obvious that the purpose of neither was to change the rule of the commercial law, which makes the liability of

the drawer of a bill which has been accepted contingent upon the failure of the acceptor to pay at maturity.

But we come now to a question of more difficulty. When the motion to quash the attachment in this case was acted upon, the plaintiffs had filed a supplemental petition, in which they alleged, in substance, that when the bills of exchange sued on were executed, the drawer, the Kildare Lumber Company, had purchased the property of the Jefferson Lumber Company, a sold-out corporation, subject to a deed of trust executed by the latter company to secure a debt due the plaintiffs; that the trustee had advertised the property for sale, and that in consideration of a postponement of the sale it was agreed between the plaintiffs and the Kildare Lumber Company that the corporation would draw the bills in controversy, which was accordingly done. It was also alleged that the Kildare company was a manufacturer of lumber, while the business of the Bemis Lumber Company was that of a lumber broker; that the former was indebted to the latter, and that the consideration which induced the Bemis Lumber Company to accept the bills was the maintenance of the business and credit of the drawer, so that it might ultimately collect its debt. It appears from the original petition that the bills were drawn and accepted on the same day and were delivered to the payees after their acceptance. But it is nowhere alleged, in so many words, that they were accepted for the accommodation of the drawer. The allegations in the supplemental petition were in reply to answers of defendants, which pleaded a want of consideration for the bills and a want of power on part of the respective corporations to draw and accept them. But we think that in determining whether at the time the writ was issued the plaintiffs had such a cause of action as would support the attachment, we may look to all their pleadings. In Tarkinton v. Broussard, 51 Texas, 550, an attachment was issued. The petition was bad on general demurrer; but an amended petition was filed which cured the defect in the original, and it was held, that a motion to quash the attachment on account of the insufficiency of the original petition was properly overruled. Looking, then, to the entire case made by the plaintiffs' petition, and supplemental petition, it can hardly be said that the facts alleged show that the bills were accepted for the accommodation of the drawer. The fact that it was indebted to the acceptor does not necessarily imply that the latter had no property of the drawer on hands with which to meet the bills at maturity. As a lumber broker, it may have had consigned to it for sale the lumber of the manufacturing company, with which it had evidently been dealing in some way. The fact alleged in the original petition, that the bills were delivered after their acceptance, shows that there was an agreement between the drawer and acceptor before the transaction was completed; and in the absence of an allegation to the contrary it seems to us that the presumption is that some indemnity to the acceptor had been provided and that the liabilities and rights as to each other were such as they appeared upon the face of the paper.

But let it be conceded, for the sake of the argument, that the allegations are sufficient to show that the acceptance was in the nature of an accommodation acceptance. Does this change the relation between the drawer and the payees, so far as this case is concerned? Is the liability of the drawer any the less a contingent liability? As between the drawer and an acceptor for his accommodation, the former is primarily liable. His implied promise to the acceptor is to supply him with funds to meet the bills at maturity, and, failing in this, to reimburse the acceptor for such sums as he should pay by reason of his acceptance. In such a case the rights of the payee or other holder are changed in some respects. He need not notify the accommodated drawer of the non-payment in case the acceptor should fail to pay. But the reason assigned for this exception to the general rule is, that since the accommodated drawer is ultimately liable and after payment of the draft has no recourse upon the acceptor, he can not be injured by failure to get notice. In an ordinary case, since the drawer who has paid the bill upon its dishonor may proceed against the acceptor for indemnity, the law requires that he shall be notified of the dishonor, so that he may take prompt action to make himself whole. The reason of the rule does not apply as to the accommodated drawer, and therefore the rule does not apply to him. Again, the holder ordinarily by discharging the acceptor discharges the drawer; but he may discharge the drawer without affecting the liability of the acceptor. In case of an accommodation acceptance the rule is reversed, and the acceptor may be discharged without discharging the drawer. This change of the rule grows out of the fact that where the acceptance is for the accommodation of the drawer, as between themselves, the latter is regarded as the principal and the acceptor the surety. Nevertheless, whether the bill be for accommodation or not, the acceptor promises to pay to the holder the sum named therein at its maturity, and by his acceptance makes himself absolutely liable for its payment. The drawer impliedly promises to make the bill good to the holder in the event the acceptor should fail to pay, and is liable only upon the happening of that contingency. In either case, the drawer incurs a liability contingent upon the happening of an event which may never happen. Until it does happen there is no existing debt against him, and under the authorities before cited his property cannot be attached.

There may be a case in which the drawer may become immediately liable. If he have no right to draw—or if he have no funds in the hands of the drawee, nor any reasonable expectation that the bill will be accepted—it is deemed a fraud upon the payee, and he is held immediately liable upon the bill. But in this case, where the bill was not only accepted, but was not delivered until after the acceptance, the rule does not apply.

We conclude that the allegations in the plaintiffs' petition do not show a case which authorized an attachment against the Kildare Lumber Com-

pany at the time the writ was issued, and that therefore the attachment upon the motion made ought to have been dissolved.

There is another ground for quashing the writ set up in the motion, which should not be passed unnoticed. The affiant upon whose affidavit the writs were granted makes oath that "the attachment now applied for is not sued out for the purpose of injuring or harassing the said defendants." Could a prosecution for perjury be maintained upon such an affidavit upon proof that the intent was to injure or harass one defendant and not the other? Unless the intent is to injure or harass both, is the affirmation false? It would seem not; and if not, the purpose of the statute is defeated. In Perrill v. Kaufman, 72 Texas, 214, the attachment was sued out against two persons as a partnership upon a firm debt, and the attachment was against them as partners. The affidavit read, "and that this attachment is not sued out for the purpose of injuring or harassing the defendant." It was held bad; but in the opinion it is said: "Before the plaintiffs were entitled to an attachment they were required to make oath that it was not sued out for the purpose of injuring or harassing either of them. If it had said 'defendants' it would have been reasonably certain that it was meant the attachment was sued out to injure or harass neither, but having said 'defendant' it means one and not the other." The expression as to the effect of the word "defendants" is clearly a dictum.. Possibly it may be correct, as applied to that case, in which the defendants in the action were partners and were sued as such. The decision of the point is not necessary in this case, but we call attention to it for the purpose of suggesting that in a case like this the safer course is to deny, in express terms, the intent not only as to both defendants, but as to either of them.

After the drafts matured the plaintiffs amended their petition, alleging that fact and that they were not paid at maturity. The plaintiffs were therefore entitled to judgment against both defendants, unless the action should have been defeated upon one or more of the grounds set up in their answer. The Court of Civil Appeals held that the District Court did not err in its rulings upon these defenses; and we think their holding was correct. It is therefore unnecessary to review those questions in detail in this opinion.

It is, however, insisted here in argument, that in case we should determine that the trial court erred in not quashing the attachment, we should still hold that judgment was properly rendered against the sureties on the replevy bond. This contention is based upon article 216 of the Revised Statutes of 1895. That article reads as follows:

"Art. 216. Should the attachment be quashed or otherwise vacated by interlocutory judgment or order of the court, the court shall make the proper order making disposition of the property, or the proceeds of the sale thereof, if the same has been sold under order of the court directing that it be turned over to the defendant.

"But the property or the proceeds of the sale thereof, if the same has not been replevied, shall remain in the hands of the officers pending the

final disposition of the main case and until it shall be finally disposed of, or until the time for perfecting an appeal has elapsed and no appeal has been perfected, when said order disposing of the property shall be carried into effect; provided, that pending the final disposition of the main case the defendant shall have the right at any time to replevy the property in the same manner as is provided for in article 204 of this chapter, or if the property has been sold he may replevy the proceeds of such sale by giving a bond in double the amount of the money arising from such sale, with like conditions as are contained in article 204. And any replevy bond given in such case, whether before or after the quashing or vacating such attachment, shall be as valid and binding as if such attachment had never been quashed or vacated."

The first paragraph of this article is original article 182 of the Revised Statutes of 1879. The second paragraph was added by an amendment passed in 1891. See Laws 1891, p. 29. Before the amendment, when an attachment was erroneously dissolved, the property was immediately surrendered to the defendant, and although the plaintiff had a right of appeal upon the final disposition of the cause, the appeal, as to that matter, was without any beneficial result. The purpose and scope of the amendment was to correct this evil, and to give the plaintiff an efficacious remedy for the correction of the error, by requiring that the status of the property or fund should be preserved, or that the defendant, before taking possession, should give a replevy bond. The difficulty grows out of the last provision of the amended article. But we think that by the use of the words "as valid and binding as if such attachment had never been quashed" it was not intended to make a bond valid which was before invalid; but to say that its validity should not be affected by an erroneous ruling holding the attachment void. A writ of attachment issued without authority of law is not "valid and binding" as against a defendant who moves to vacate it. Nor is a replevy bond any more binding than the attachment itself. "As valid and binding" does not mean "more valid and binding." If the Legislature had intended to provide that whenever property attached shall be replevied by the defendant, the bond shall be valid, although the writ was unlawfully issued, it seems to us that they would have expressed that intention in plainer words; and in the absence of language clearly evincing such a purpose, we should be reluctant to hold that it was intended to secure to a plaintiff who had abused the process of the court an advantage which had been obtained by his own wrong.

Again, the provision under consideration places bonds executed before the dissolution of the attachment, and those executed after that time, upon precisely the same footing, and if it should be held that the intent was to make the former valid, although upon appeal the order of dissolution should be affirmed, the same holding would necessarily apply to the latter. The result would be, that instead of giving the defendant a remedy for securing a return of his property, by giving a bond in lieu of it, it would place upon him the onerous obligation of

securing the debt, although the attachment and seizure may have been unlawful. The Legislature did not intend this. They merely intended that the replevy bond should take the place of the property; and that as in the one case upon the dissolution. of the attachment the property should be released, so in the other the bond should be discharged.

Our conclusion upon the whole case is that the judgment against the Kildare Lumber Company should be affirmed, but that the judgment upon the replevy bond should be reversed and vacated; and it is so ordered.

*Reversed as to attachment, otherwise affirmed*