HOWE GRAIN & MERCANTILE CO. v. A. B. CROUCH GRAIN CO. et al. (No. 2113.)

(Court of Civil Appeals of Texas. Texarkana. April 15, 1919. On Motion for Rehearing May 15, 1919.)

1. CARRIERS ⬡⟿59—DRAFTS WITH FICTITIOUS BILLS OF LADING ATTACHED — PAYMENT — LIABILITY OF INNOCENT HOLDER.

Where drawee of drafts with forged bills of lading attached pays payee who is innocent holder for value, it cannot thereafter, on discovering that goods have not been shipped and that bills of lading are fictitious, recover its loss from payee.

2. CARRIERS ⬡⟿59—BILL OF LADING—TRANSFER TO BANK — HOLDER OR COLLECTING AGENT.

Where bank, payee of drafts with bill of lading attached, upon receiving drafts gave the drawer unconditional credit on its books for the amount of the drafts, the bank was owner and holder of the drafts, and not merely the drawer's collecting agent, though it might have applied amount upon drawer's pre-existing debt, or upon nonpayment might have claimed right to charge amount back against drawer.

### On Motion for Rehearing.

3. CARRIERS ⬡⟿59 — DRAFT AND ATTACHED BILLS OF LADING—TRANSFER—GUARANTY OF SIGNATURES.

Where drawer in transferring drafts to payee bank assigned bills of lading purporting to be issued to drawer, bank, in forwarding drafts, with attached bills of lading, to drawee, was not a guarantor of signatures attached to bills of lading.

4. CARRIERS ⬡⟿59 — FICTITIOUS BILLS OF LADING—DRAWEE'S ACTION AGAINST PAYEE —BURDEN OF PROOF.

Drawee, seeking to recover from payee amount paid on drafts before discovery that attached bills of lading were fictitious, has burden of proving that payee, in forwarding drafts with forged bills of lading attached, was so negligent in not detecting forgery as to make it responsible for drawee's loss.

5. CARRIERS ⬡⟿59—FICTITIOUS BILLS OF LADING—DRAWEE'S ACTION AGAINST PAYEE— JURY QUESTION.

In drawee's action to recover from payee amount paid on drafts before discovery that attached bills of lading were fictitious, evidence held insufficient to present issue of whether payee in forwarding drafts with bills of lading was negligent in failing to detect forgery.

Appeal from District Court, Grayson County; C. T. Freeman, Judge.

Suit by the Howe Grain & Mercantile Company against the A. B. Crouch Grain Company, the Gulf, Colorado & Santa Fé Railroad Company, and the City National Bank of Temple. Judgment for plaintiff against first-named defendant, but for other defend-

---

⬡⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Tex.)    HOWE GRAIN & MERCANTILE CO. v. A. B. CROUCH GRAIN CO.    947.

(211 S.W.)

ants. From that portion of judgment denying it recovery against other defendants, plaintiff appeals. Affirmed.

Webb & Webb and Wood, Jones & Hassell, all of Sherman, for appellant.

Lee, Lomax & Smith, of Ft. Worth, W. W. Hair, of Temple, A. L. Curtis, of Belton, and Hamp P. Abney, and Head, Dillard, Smith, Maxey & Head, all of Sherman, for appellees.

HODGES, J. In 1916 the A. B. Crouch Grain Company, a private corporation, was engaged in buying and selling grain at wholesale in Temple, Tex. Much of its banking business was done with the appellee the City National Bank, domiciled at the same place. The Howe Grain & Mercantile Company, another private corporation, located at Howe, Tex., was also engaged in buying and selling grain. On or about March 1, 1916, the A. B. Crouch Grain Company wrote to the Howe Grain & Mercantile Company a letter, stating that it had on hand more wheat than it could handle, and that it was shipping out three carloads to three different points in Texas, naming them, and requested permission to draw on the Howe Grain & Mercantile Company for the price of the three carloads of grain, with bills of lading attached, and with the understanding that the latter should draw back on the A. B. Crouch Grain Company for like amount, together with the expense. To this letter the Howe Grain & Mercantile Company replied, consenting that the drafts might be drawn, and agreeing to pay them if upon inspection the bills of lading appeared to be good. This transaction was understood between the two corporations to be merely a means of enabling the A. B. Crouch Grain Company to secure a temporary loan to meet pressing demands. On March 3, 1916, the A. B. Crouch Grain Company presented to the appellee bank three bills of lading, purporting to have been issued by the Gulf, Colorado & Santa Fé Railroad Company for three carloads of grain consigned by the A. B. Crouch Grain Company to different points in Texas. Drafts were then drawn by the A. B. Crouch Grain Company on the Howe Grain & Mercantile Company in favor of the bank for the aggregate sum of $3,707.91, representing the value of the grain referred to in the bills of lading. To these drafts the bills of lading were attached, and delivered to the bank. The amount of the drafts, less the usual discount, was entered by the bank on its books to the credit of the A. B. Crouch Grain Company subject to its check. In due course of business the drafts were presented to and paid by the Howe Grain & Mercantile Company; and that company, in accordance with the agreement previously referred to, drew back for a like amount upon the A. B. Crouch

Grain Company. That draft was never paid, the A. B. Crouch Grain Company having, in the meantime, become insolvent. It afterwards developed that the bills of lading attached to the drafts paid by the Howe Grain Mercantile Company were forgeries, and that the grain they purported to represent had never been shipped, but neither the bank nor the Howe Grain & Mercantile Company knew of the fraud, or of the forgeries, till after the dishonoring of the draft drawn by the Howe Grain & Mercantile Company against the A. B. Crouch Grain Company.

This suit was later filed by the Howe Grain & Mercantile Company against the A. B. Crouch Grain Company, the Gulf, Colorado & Santa Fé Railroad Company, and the appellee the City National Bank of Temple, in an effort to collect the amount of the dishonored draft.

The case was submitted to the jury on special issues, only two of which were answered. These were to the effect that the bills of lading were fictitious and worthless; that the officers and employés of the appellee bank accepted the drafts with bills of lading attached, and gave the A. B. Crouch Grain Company credit therefor on its books; that those officers and employés did not then know that the bills of lading were fictitious and worthless. Two other questions propounded remained unanswered, and were treated by the court as immaterial. One was, Did the officers and employés of the City National Bank fail to exercise ordinary care, in accepting and handling the bills of lading attached to the drafts drawn by the A. B. Crouch Grain Company upon the plaintiff, to determine whether or not those bills of lading were valid and genuine? The other was, Could the officers and employés of the appellee bank, at the time it accepted the drafts with the bills of lading attached, by the exercise of ordinary care have known that the bills of lading were fictitious and worthless? The court, treating the answers to the first, second, and last questions propounded as sufficient, entered a judgment in favor of the appellee and the railway company. Judgment was also rendered by default in favor of the Howe Grain & Mercantile Company against the A. B. Crouch Grain Company. This appeal is prosecuted from that portion of the judgment which denied the appellant a recovery against the bank.

[1] The controlling questions in this case are: Was the bank a bona fide holder for value of the drafts? or was it a mere collecting agent, still in possession of the proceeds of the payment made by the Howe Grain & Mercantile Company? If the bank occupied the attitude of an innocent holder for value, it cannot be held responsible to the appellant in this suit. Blaisdell v. Bank, 96 Tex. 626, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944; Wichita Falls Com-

press Co. v. Moody, 154 S. W. 1039. The evidence shows that the course usually pursued in the dealing between the bank and the A. B. Crouch Grain Company was as follows: When the A. B. Crouch Grain Company purchased grain and drafts were drawn on it therefor with bills of lading attached, the bank paid those drafts, and retained the bills of lading as security until the grain was again shipped out or was stored in warehouses; and the amount so paid was charged on the books of the bank against the A. B. Crouch Grain Company. When the grain was unloaded and stored the bank exchanged the bills of lading for a corresponding amount of warehouse receipts. When goods were sold by the A. B. Crouch Grain Company and shipped out drafts were drawn in favor of the bank, to which were attached the bills of lading, and the amount of the drafts placed to the credit of the A. B. Crouch Grain Company on the books of the bank. If for any reason the drafts drawn by the A. B. Crouch Grain Company and taken by the bank were not paid, the amount previously credited was charged back on the books of the bank against the A. B. Crouch Grain Company. When a credit was entered in favor of the A. B. Crouch Grain Company for drafts taken on goods shipped out, the amount so entered was subject to the checks of the grain company. There is no evidence that this transaction differed in any respect from the custom above referred to. The record merely shows that when the bank took up those drafts a credit for the aggregate amount was entered on its books in favor of the A. B. Crouch Grain Company. It was also shown that at the time this transaction occurred the grain company owed the bank a net balance of approximately $21,000, but the financial standing of the grain company was good, and there is nothing to indicate that its checks were not drawn and honored by the bank, or that further credit was not extended.

[2] Do these facts show that the bank was the owner and holder of the drafts, or do they show as a matter of law that it merely undertook to collect them for the grain company? The issue is one of fact, and the judgment of the trial court involves a finding which answers the first question in the affirmative; and we are of the opinion that it should be sustained. If the grain company had desired to invest the appellee bank with the title to the drafts, what was required more than was done? The bank was made the payee, and in consideration gave the grain company a corresponding credit upon its books. The evidence shows further that this credit was unconditional and might have been drawn upon at once. Such an entry was as much a payment as if it had been made in cash and the cash redeposited with the bank. If the drafts had not been paid

by the appellant, the remedy of the bank would have been that of a payee holding a dishonored draft, not that of an agent against a principal. The fact that in the event the draft was not paid the bank might have claimed the right to charge the amount back against the grain company does not negative a transfer of the draft. The grain company was in the position of a drawer, and as such was responsible to the payee in the event of nonpayment by the drawee. Kildare Lumber Co. v. Atlanta Bank, 91 Tex. 95, 41 S. W. 64. That being true, the right to charge the drawer with its liability existed, regardless of the source from which the funds held by the bank might have come. The fact that in adjusting its account with the grain company the bank may have applied the amount of the drafts upon a pre-existing debt did not affect its standing as a purchaser entitled to protection. Gaston & Ayres v. Campbell, 104 Tex. 576, 140 S. W. 770, 141 S. W. 515; Masterson v. Ross, 152 S. W. 1156.

The evidence makes it clear that the Howe Grain & Mercantile Company was not a purchaser of any grain sold by the A. B. Crouch Grain Company, but was only intending to hold the bills of lading as security for the loan which it had agreed to make. Had the drafts drawn by the former been paid, the forgery of the bills of lading would have been of no consequence, and this controversy would not have arisen. The Howe Grain & Mercantile Company was the victim of a deception perpetrated by the A. B. Crouch Grain Company, the party whom it had engaged to assist in its financial troubles. While the appellee was used as an agency in carrying out the agreement for the loan, it was at the time ignorant of any previous understanding between those parties, and regarded the transaction as one incident to an ordinary purchase and sale of goods.

The failure of the court to require the jury to answer the remaining questions was immaterial. The state of the evidence was such that the court might have refused to submit those issues to the jury, and the failure to require answers can give no greater cause for complaint. There was no testimony tending to show culpable negligence on the part of the officers of the bank in failing to detect the forgery of the bills of lading, and had the jury found against the appellee on those issues it would have been the duty of the court to set the findings aside.

The judgment is affirmed.

## On Motion for Rehearing.

[3-5] In its motion for a rehearing the appellant insists that the evidence was sufficient to raise the issue of negligence on the part of the bank officials in failing to detect the forgery of the bills of lading. The bills of lading

were issued, or purported to be, to the A. B. Crouch Grain Company, and were by it assigned to the bank as security for the draft drawn on the appellant. The bank was not therefore a guarantor of the signatures attached to the bills of lading. In this suit it devolves upon the appellant to show that the bank, in accepting and forwarding the bills of lading, was guilty of that degree of negligence in failing to detect the forgery as would make it legally responsible for the loss which resulted therefrom. The record shows that at the time of this transaction the commercial standing of the A. B. Crouch Grain Company was good; it had done an extensive business in buying and selling grain, and many transactions of a similar nature had been conducted through the bank; and up to that time nothing had occurred to arouse suspicion of fraud or dishonesty in the dealings of the A. B. Crouch Grain Company. There was no evidence that the bank official who accepted those bills of lading knew the signature of the railway agent whose name had been forged. The evidence shows further that the signature of the agent was frequently signed by a subordinate employé. The presentation of the bills of lading by the A. B. Crouch Grain Company was in effect a representation to the bank that they were genuine and bore the signature of one authorized to issue them. To hold that the bank official was guilty of negligence in failing to question the truth of that representation, made by a respectable patron, and to push his inquiries still further is, we think, requiring a greater degree of diligence than that exacted by law. There was nothing in the bills of lading or in the transaction that was calculated to create suspicion of dishonesty. We therefore adhere to our original conclusion that the evidence was insufficient to present an issue of negligence, and the motion is overruled.