## WALDEN et al. v. LOCKE et al.
### No. 975.

Court of Civil Appeals of Texas. Eastland.
April 29, 1932.

Rehearing Denied May 12, 1932.

See also (Tex. Civ. App.) 33 S.W.(2d) 475.

Lockhart, Garrard & Brown, of Lubbock, for appellants.

Ritchie & Ritchie, of Mineral Wells, for appellees.

LESLIE, J.

This suit was originally filed by R. B. Locke and wife, Gillie Frost Locke, against G. E. Walden and wife, Pearl Walden, and W. R. Lee and wife, Ludie Lee, on a debt evidenced by a note and for foreclosure of a vendor's lien on certain real estate and the foreclosure of a chattel mortgage lien on personal property, each of such liens securing the note. The foreclosure of an attachment lien on other and different property was also sought. The defendants Waldens moved to quash the writ of attachment, as well as to abate the proceedings. The trial was before

the court without a jury, and judgment was rendered in favor of the plaintiffs against G. E. Walden and W. R. Lee jointly and severally. No personal judgment was granted against Mrs. Walden and Mrs. Lee. The attachment lien was foreclosed and fixed upon certain sections of land owned by said G. E. Walden, excepting therefrom 200 acres claimed as a homestead of the Waldens, who alone prosecute this appeal.

The note in suit and the lien securing it were subordinate to a $20,000 note owned by S. H. Smith and secured by a first lien on the same real estate and personal property endeavored to be foreclosed on in this suit. These facts were alleged in the original petition. Simultaneously with the filing of the petition the attachment proceedings were instituted, the writ issued and levied on G. E. Walden's land.

The writ of attachment is based upon an affidavit separate and apart from the allegations of the petition; that is, the writ is not based upon the verified allegations of the petition. The motion to quash the affidavit was filed March 9, 1931. On July 13, 1931, more than two years after the issuance and service of the writ of attachment referred to, the plaintiffs filed a first amended original petition, in which they set out, in substance, the same matters contained in their original petition, and in addition thereto alleged that, after their suit had been filed, said S. H. Smith filed his suit on the $20,000 note and foreclosed a first lien on the property covered by plaintiffs' liens, and that by reason thereof the plaintiffs' security (second lien) had been lost and become valueless. In this amended petition they alleged the fact' of the issuance of the writ of attachment upon the lands of G. E. Walden and prayed for a judgment against all of the defendants as originally, and for the foreclosure of the attachment lien. Other facts will be stated in the discussion of the points upon which the appeal is predicated.

The defendants' first five propositions are briefed together and will be so considered here. The first is to the effect that, in suing on a secured debt and seeking a foreclosure of their liens and the appropriation of such security to the payment of the debt, without any allegations as to the value of the security, the plaintiffs are not entitled to the issuance and levy of a writ of attachment upon other property of the debtor.

The second makes the additional contention that, in a case where the owner of the secured debt elects to proceed to foreclose on the security, the mortgaged property must be sold at foreclosure sale and the proceeds applied, and the deficiency thus ascertained before recourse against the property of the debtor, other than that mortgaged, may be had, and if he proceeds otherwise the writ of attachment upon such other property should be quashed upon motion.

The third is that, if the owner of a secured debt elects to proceed to foreclose on security without any allegation as to its value, and without any allegation from which, if supported by proof, the court may ascertain the value of the security, an attachment issued and levied upon such other property of the debtor is upon an unliquidated demand, and for that reason should be quashed.

The fourth proposition presents that, where the creditor or plaintiff alleges in the petition that a note is secured by vendor's lien on real estate and a chattel mortgage lien on personal property, and such liens are sought to be foreclosed without any allegations as to the value of such security, there is a fatal contradiction between such allegations and the statement in an independent affidavit for attachment issued under said petition and to the effect that the plaintiff will probably lose the debt unless a writ of attachment is issued, and that such contradictory allegations and statements vitiate the attachment levied on the property other than that secured by the contract lien.

The fifth proposition is that, where parties agree upon security for a debt, such security is presumed to be of value sufficient to support such debt, in the absence of allegations to the contrary.

These first contentions of the defendants are, in brief, that the plaintiffs having said security for their debt, and having elected to stand upon such security and foreclosure of the contract liens, they were not at the same time entitled to the issuance of a writ of attachment; that is, so long as the plaintiffs sued upon the contract liens, in the absence of allegations that such security was insufficient to satisfy their debt, the law presumes that the security was sufficient, and consequently the only method by which they could legally obtain the issuance of a writ of attachment and its levy on the defendants' property was either to abandon the original security or allege its value and make a showing in the proof that it's value was insufficient to discharge the debt secured, the contention being that the plaintiffs did neither.

In support of the above contentions the defendants cite the case of Branshaw v. Tinsley, 4 Tex. Civ. App. 131, 23 S. W. 184, 185. We do not think that opinion is to be given the effect contended for by the defendants, but it is believed that it supports in principle and in effect the position of the plaintiffs, and sustains the proceedings taken by them to collect their debt. The plaintiff in that case did allege in the petition that the $7,110 note sued on was secured by a mortgage on sheep of the probable value of $2,500, and procured a writ of attachment on other property; but

the affidavit there, as here, was based on the full amount of the actual indebtedness due. In that case it was contended that the attachment was unauthorized "because the attachments could not be legally issued unless it was shown by the plaintiff in his affidavit and petition that he, plaintiff, would probably lose his debt unless such ´attachment was issued, which fact could not exist where he had a mortgage and security for $2,500; fourth, because a writ of attachment cannot issue for the purpose of enforcing a part of a payment, where the other portion of the same debt is secured by a lien on property," etc.

In disposing of the questions presented, the court used this language: "Plaintiff's right to attachment was not impaired by the fact that he had collateral security for his debt, or a part of it. It was proper for plaintiff, under the law, to provide for the collection of his entire debt by attachment, and, in so doing, to comply with the terms of the statute. The petition did not admit the value of the sheep as a credit on his note. It was not paid, and was collectible by attachment. A creditor may abandon his security by mortgage, and attach other property of the debtor, if he sees proper, as it seems was done in this case. The record does not show that the attachments were issued for the whole amount alleged to be due, but they should have been for such amount."

The sentence preceding the last in the excerpt is set out in the defendants' brief and relied on in support of their contentions. The abstract proposition embraced in said sentence is, as such, correct, but it is not controlling here. Undoubtedly a creditor may abandon his security and attach other property of the debtor, but the opinion cited does not hold that a creditor must necessarily abandon his security before having recourse to attachment. It appears to hold the contrary.

On the other hand, we are of opinion that the questions presented by the above propositions are settled by the opinion in the case of First National Bank of Gallatin v. Wallace (Tex. Civ. App.) 65 S. W. 392, 394. In that case the bank brought suit in the district court of Hill county against Wallace on a judgment rendered in his favor against Wallace and one Rodemer in the state of Tennessee. It was disclosed by the petition that Rodemer had died since the date of judgment and that some amount would be realized from his estate as a credit on the debt. A writ of attachment was issued and levied on the lands of Wallace. After the issuance and levy of the writ, a substantial sum was received by plaintiff from the Rodemer estate and was· credited on the original judgment and the amount so realized was shown by an amended petition filed in the case. The trial court rendered judgment for the balance but

sustained the defendants' motion to quash and abate the attachment, the motion to quash complaining of the fact that the plaintiff's petition did not allege what amount would ·or could be collected from Rodemer's estate, and, in effect, that the balance credited was uncertain and was not such liquidated demand as would support an attachment. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of the bank for the foreclosure of the attachment lien on Wallace's land. The opinion reveals a state of facts in substance strikingly similar to those here involved. In disposing of the questions raised, the court, in part, used this language: "Another ground of the motion to quash was that the plaintiff's petition was uncertain and contradictory, in that it was alleged that no part of the judgment sued on had been paid, and contained the further allegation that none of the judgment could be collected, except such sum as might be realized from the estate of one Rodemer, who was a party defendant with Wallace to said judgment; it not being alleged what amount would or could be collected from the estate. It was alleged in the petition that the judgment sued on was rendered against both Wallace and Rodemer; that thereafter Rodemer died, and that his estate was insolvent; that prior ·to his death Rodemer executed a general assignment for the benefit of his creditors. It was also alleged that the judgment was wholly unpaid, and that the plaintiff had no means of collecting the same, except the portion it might realize from Rodemer's estate, unless by subjecting Wallace's lands in Hill county to the satisfaction of the judgment. The affidavit for attachment contained the statutory allegation that the plaintiff would probably lose its debt unless the attachment was issued. The allegations in the petition are not contradictory. They simply show that the judgment sued on constituted a claim against Rodemer's estate, and the possibility of realizing something out of the estate on a settlement thereof. In the very nature of things, it was impossible to state with certainty whether anything would be realized from the estate, or what sum would be realized. The fact that something might possibly be received from the estate would not prevent the issuance of attachment against Wallace, and the statement in the affidavit for such attachment that the plaintiff would probably lose its debt unless the attachment was issued was not unwarranted. After this suit was brought, and the attachment was issued and levied, the plaintiff received from Rodemer's estate a considerable sum, which was credited on the judgment, and by an amended petition the credit was admitted. The attachment was not rendered invalid by these subsequent proceedings."

What is held in the foregoing opinion is so

applicable to the facts of the instant case, further comment in that respect is unnecessary.

In the case before us the original petition set forth that the plaintiffs' debt and lien were subordinate to a $20,000 indebtedness and lien securing the same. The affidavit for attachment stated unequivocally, and in compliance with the statute, that the defendant G. E. Walden was about to convert his property or a part thereof into money, for the purpose of placing it beyond the reach of his creditors, and that the attachment applied for was not sued out for the purpose of injuring or harassing the said defendant, and that the plaintiffs would probably lose their debt unless the attachment issued.

■ Under the circumstances and the showing made by the pleadings and the affidavit for attachment, this court holds that it was not necessary for the creditors (plaintiffs) to abandon or waive the security originally reserved, in order to be able to avail themselves of the proceedings in attachment for the collection of the debt. The authorities discussed warrant the holding, and any other view would render the proceedings in attachment so technical as to be of little value in the collection of a debt when the creditor had taken security for the same and that security proved of doubtful or inadequate value.

Although it may be appropriate in such cases for the plaintiff to allege in specific terms the insufficiency of the security, yet we do not see how the plaintiffs could have been more definite in setting up the grounds that impelled them to take the attachment route for the collection of the debt. Any estimate embodied in the original petition as to the value of the security would have been nothing more than an estimate, for the true value thereof was subject each day to the ever-changing conditions and values of real estate and personal property such as that covered by the vendor's lien and the chattel mortgage here involved.

■■ The affidavit was in statutory form. The statements contained in it authorized the attachment and its levy. The validity of an attachment depends, not upon the truth of the facts stated in the affidavit, but upon the fact that they are so stated. 5 Tex. Jur. p. 207, § 39. If they were false they might furnish the basis for a damage suit or recovery on the bond, but they would afford no ground for quashing the writ under the facts of this case. Subsequent events in the history of this lawsuit disclose that the plaintiffs' conviction that they would probably lose the debt if the writ was not issued was well founded. The first lien mentioned in the plaintiffs' original petition was foreclosed and the total security held by the plaintiffs under their contract liens was bid in for less than the $20,000 indebtedness. Such facts set forth in the first amended original petition, which claimed a foreclosure on the attachment lien, did not in any way abandon or fundamentally alter the original suit so as to take it away as a basis of the attachment or deprive the plaintiffs of that remedy. The statutes in this state relating to attachments do not forbid a creditor's resorting to that remedy, even though he has a secured demand. Branshaw v. Tinsley, supra; Howard v. Parks, 1 Tex. Civ. App. 603, 21 S. W. 269, 272.

In those states where it is held that a mortgagee must elect whether he will proceed by attachment or sustain his right by virtue of the mortgage, and that the two remedies are inconsistent and cannot be pursued together (as here contended by defendants), there is either a statute making such provision, or the equity of redemption of personal property is, under the authorities, or such statutes, not subject to attachment. Ottumwa Nat. Bank v. Totten, 94 Mo. App. 596, 68 S. W. 386; Evans v. Warren, 122 Mass. 303; Whitney v. Farrar, 51 Me. 418; Jones, Chattel Mortgages, § 565; 6 C. J. § 117, p. 86.

However, the section in Corpus Juris just cited states the general rule to be that, "In the absence of any statutory provision to the contrary, the fact that a demand is otherwise secured will not prevent the issuance of an attachment in aid of an action thereon." Such seems to be the rule in many states, as may be seen from the authorities cited in support of the text, among them being the Texas case of Branshaw v. Tinsley, supra, relied on by the defendants.

■ The mortgagee in this state is a mere lienholder, and the plaintiffs' contract lien was not waived by suing out the attachment on the debt secured thereby. Howard v. Parks, supra; Byram v. Stout, 127 Ind. 195, 26 N. E. 687; 6 C. J. § 117, p. 86, note 53.

By what has been said we are not to be understood as holding that the defendant Walden might not have been entitled, on final judgment, to have the original lien security (had any of it remained) first subjected to a sale and the proceeds applied to the debt here sued on. He doubtless, under such circumstances, would have been entitled to a marshaling, since he had sold the property to the defendant Lee, who had assumed the payment of the note in suit; but we believe, as contended by the plaintiffs, that such a matter would not go to the validity of the attachment proceeding, the regularity of which, except in one detail to be considered, is in no way challenged, the affidavit, bond, writ, etc., being regular on their face.

■ There is no validity in the contention that, at the time the attachment was sued out, the plaintiffs' claim or debt was a contingent claim rendering the issuance and levy

836

of the writ void. The affidavit was based upon the amount due under the terms of the note, which was, on its face, an unconditional promise of the defendant to pay the same. That amount was the only true basis for the attachment. Brown v. Wyatt, 72 Tex. 60, 10 S. W. 321; Branshaw v. Tinsley, 4 Tex. Civ. App. 131, 23 S. W. 184, 185.

This is not a suit based upon a claim for unliquidated damages, nor upon a contingent claim or obligation like that involved in the case of Kildare Lumber Co. v. Atlanta Bank, 91 Tex. 95, 41 S. W. 64, 65, cited by the defendant. In that case the court held the attachment was irregular because the bill not being due the drawer and indorser of such bill of exchange were sureties only and not liable except in case of default of the acceptor. The debt as to them was held unliquidated until after the due date and demand.

■■ The affidavit for attachment and the original petition filed at the same time may. be construed together. Moffett on Exemptions and Writs, par. 11, pp. 13-15; Gray & Wallace v. Steedman Bros., 63 Tex. 95. As noted, the affidavit was independent or separate and apart from the petition and in full compliance with the statute. The contents of the affidavit fully warranted the issuance of the writ. Under the facts of this case there arose no presumption of law which would deny the plaintiffs' right to resort to these attachment proceedings for the collection of their debt.

The five propositions considered are overruled.

■ Points 6, 7, and 8 are briefed together and present the contention that the plaintiffs' right to an attachment was fixed by the original petition on file at the time the affidavit for attachment was made and the writ issued, and that the filing of the first amended original petition was a declaration on a different cause of action and an inconsistent remedy from that asserted at the time the writ of attachment was issued and levied; and that it (the filing of the amended petition) had the effect of discharging the lien, if any, fixed by the levy of the writ sued out under the original petition. In support of these propositions the defendants cite Lutterloh v. McIlhenny, 74 Tex. 73, 11 S. W. 1063, and Boyd v. Beeville, 91 Tex. 439, 44 S. W. 287. In these cases it was held that a writ of attachment may not be sued out on one cause of action, a lien acquired by its levy foreclosed, and the property sold to satisfy the judgment rendered upon a different cause of action injected by a subsequent amendment. That is good law, but without application here, since the plaintiffs' declaration each time was on the same cause of action. By their amendments they merely accounted for a possible security reflected by the original petition, but deemed by them inadequate at the institution of the suit, as evidenced by the pleadings then filed, and the affidavit for attachment. when construed together, as they should be. It was proper to call these matters to the attention of the court in that manner.

In the instant case the plaintiffs did not pursue a particular remedy without results and then seek to pursue another and inconsistent remedy, as held in Bauman v. Jaffray, 6 Tex. Civ. App. 489, 26 S. W. 260; Norris v. Wilkens (Tex. Civ. App.) 3 S.W.(2d) 126, cited by the defendants. The principle of election of remedies is not involved in this case. The court did not err in refusing to quash the attachment or in overruling the plea in abatement, as charged in the three propositions under consideration.

The ninth proposition is overruled. The affidavit for attachment fully discloses the authority of the agent to make the same, and designates the affiant as such agent. Butler v. Nail (Tex. Civ. App.) 36 S.W.(2d) 307.

■ The tenth proposition is to the effect that an attorney in whose hands a note is placed for collection, where the note provides for 10 per cent. attorneys' fees to be paid by the debtor, is interested in the results of the suit to such an extent as to be disqualified to swear plaintiff or plaintiffs' purported agent to an affidavit for a writ of attachment. The note was in the usual form and contained the customary stipulation as to attorneys' fees. It was alleged that the note had matured and was unpaid and that it had become necessary to sue upon the indebtedness. That the note had been placed in the hands of plaintiffs' attorneys for collection and that the plaintiffs had agreed to pay said attorneys such attorneys' fees which had "accrued and become due and payable as a part of the principal indebtedness."

No authority is cited in the defendants' brief sustaining this contention; but after a careful consideration of the question we are of opinion that the attorney who, as a duly qualified notary public, swore the affiant to the affidavit for attachment, was in no way incapacitated to perform that act by reason of the matter of said attorneys' fees. It was proper for such attorney to prepare the affidavit for his client, and the statute fully and specifically prescribes its contents. In preparing that instrument and in swearing the litigant to it, the attorney as a notary exercised no judicial discretion of his own, and the instrument would have been invalid had it, in substance, departed from the mandate of the statute. The affidavit thus sworn to, if false, would have been a sufficient basis for a criminal prosecution. The attorney as a witness in a perjury or false swearing charge based upon the affidavit, would have been a competent witness to prove the making of the same and affiant's knowledge of its contents. We can conceive of no way in which the defendant could have been injured by the attorney's taking the affidavit. It

was merely a ministerial act and as such fully warranted by the authorities. Snodgrass v. Brownfield State Bank (Tex. Civ. App.) 251 S. W. 567; Lundy v. Little (Tex. Civ. App.) 227 S. W. 538; Kosminsky v. Raymond, 20 Tex. Civ. App. 702, 51 S. W. 51; Power v. First State Bank (Tex. Civ. App.) 162 S. W. 416; Ryburn v. Moore, 72 Tex. 85, 10 S. W. 393; Forest Oil Co. v. Wilson (Tex. Civ. App.) 178 S. W. 626; 2 Tex. Jur. § 11, p. 348.

This proposition is overruled.

For the reasons assigned, the judgment of the trial court is affirmed.