### PARMA v. FIRST NAT. BANK OF CAMERON.

#### No. 7566.

Court of Civil Appeals of Texas. Austin.

March 4, 1931.

Rehearing Denied April 1, 1931.

W. A. Morrison, of Cameron, for appellant.

Henderson, Kidd & Henderson, of Cameron, for appellee.

BAUGH, J.

This is the second appeal of this case. The former appeal is reported in 22 S.W.(2d) 957. Upon jury answers to special issues submitted, the trial court rendered judgment in favor of the bank for its debt, and against appellant on his cross-action; hence this appeal.

The bank sued Parma on overdrafts drawn on it by Parma and paid to farmers for cotton purchased by him from them between October 5 and October 12, 1927, aggregating $3,218.99. Parma admitted this indebtedness, and set up a cross-action for $4,950.64, the amount of an acceptance delivered to him on September 17, 1927, by the Vest Cotton Company, a corporation, in payment for 44 bales of cotton sold by him on that date to said company, alleging: (1) That said bank had failed to give him credit for same; or (2) that the bank and the Vest Cotton Company, known by the bank to be then insolvent, had fraudulently conspired to get possession of, and had sold, said 44 bales of cotton without paying him for same; and (3) that, never having been paid for said 44 bales of cotton, the title to same never passed out of him; and that the bank, when the cotton was shipped away from Cameron, purchased the bills of lading thereon with drafts attached, and was guilty of conversion of the cotton and liable to Parma for its value. The Vest Cotton Company was alleged to be insolvent, and was not made a party to the suit.

It appears that appellee bank was financing the Vest Cotton Company in purchasing and shipping cotton at Cameron during the 1927 season by paying its acceptances and charging it interest on overdrafts. Parma purchased cotton for the Vest Cotton Company for which he was paid 50 cents per bale. In purchasing same, however, he paid for it with checks on his individual account in appellee bank. Usually the Vest Cotton Company took up his cotton at the end of each day, giving him its check on appellee bank for all he had paid out that day, plus the 50 cents for each bale. Sometimes, however, Parma purchased cotton on his own initiative at prices above the day's market limit, given him by the Vest Cotton Company, such purchase being made at his own risk, and subsequently sold the cotton outright to the Vest Cotton Company.

On September 17, 1927, Parma had on hand 44 bales purchased by him during the preceding ten days, partly on market quotations, and partly at his own risk. On that date, he sold same to the Vest Cotton Company, which delivered to him its check on appellee bank for $4,950.64 in payment therefor. He then delivered to Richard Vest, its agent, the com-press receipts for the cotton. He also indorsed its check to him, and handed same, together with his bank passbook and deposit slip for the amount, back to said Richard Vest, with request that he deposit same to Parma's credit in appellee bank. This method of deposit was a common practice between them, and was an accommodation to Parma whose place of business was about a mile from the bank. The bank had nothing to do with the arrangement between Parma and the Vest Cotton Company.

Purchases and sales in this manner continued until October 12 or 13, 1927, when the bank notified Parma that his personal account was overdrawn several thousand dollars. Parma then first discovered that he had not been given credit for the $4,950.64 check in question. Meantime most of the 44 bales had already been sold by the Vest Cotton Company, shipped out in different lots to Galveston and Houston, under bills of lading with drafts attached, drawn on the purchaser by said company, indorsed by it to appellee bank, which gave the Vest Cotton Company credit for same on its indebtedness to said bank.

On the issues presented the jury found: (1) That it was in contemplation of the parties that Parma was to have the cash on said acceptance for $4,950.64 or credit for it at appellee bank; (2) that Parma redelivered the acceptance to Richard Vest for the purpose and with the request that he deposit same immediately to appellant's credit in said bank; (3) that Richard Vest did not so deposit it; (4) that said Vest did not act fraudulently at the time for the purpose of cheating Parma out of his cotton without paying him for it.

The other issues submitted relate to the value of the cotton, and are not controverted.

Appellant's first contention is that, under the undisputed evidence, the sale of the cotton to Vest Cotton Company being intended as a cash transaction, and not having been paid for, no title to said cotton passed to said company, and that the bank therefore converted the cotton by purchasing the drafts with bills of lading attached.

We do not sustain this contention. It is clear, we think that, when Parma delivered the compress receipts to the Vest Cotton Company on September 17th, it was intended as a delivery of the possession of the cotton itself. Such was its effect. Carpenter v. Coffey (Tex. Civ. App.) 245 S. W. 1041. In doing so he invested the purchaser with full power to dispose of it and make delivery to a subsequent purchaser. Parma knew at the time that said company was only a local buyer; that it was constantly shipping out cotton so handled; that this cotton would in the usual course of business probably be resold and shipped out of Cameron within a few days; and that such was the only purpose for which Vest Cotton

Company purchased it; 40 bales of it were commingled with and shipped out in six different shipments prior to October 1st; and the other 4 bales subsequently shipped in other lots. There was nothing in any of these shipments to indicate that the cotton here involved had not been paid for; nor to identify the cotton in question as being purchased from Parma. That company had possession of the cotton with all the indicia of ownership, and it was handled in the same manner that thousands of other bales were handled by the same parties through appellee bank.

When Parma delivered his check to Richard Vest for deposit in the bank, he made Vest his agent for that purpose, and Vest's dereliction in failing to do so became his own. So far as the record shows, the check was never presented to the bank for payment or credit. The evidence is undisputed that, if same had been presented at any time between September 17th and October 12th, it would have been paid. Between those dates Parma received from the Vest Cotton Company at least six other acceptances for cotton sold by him to it, aggregating more than $30,000, which were deposited to his credit in appellee bank; and during said intervening period he had in his possession at various times his bank passbook, in which no credit or deposit had ever been entered for the $4,950.64 check dated September 17th. Parma testified, however, that it was not until the bank called his attention to his overdraft on October 12th or 13th that he examined his book and first discovered that no such credit had been given him.

The general rule is that in cash sales of personal property, where a check is given for the purchase price, the sale is only conditional, and title does not pass to the purchaser unless and until the check is paid. If payment of such check is refused, the seller may reclaim his property, provided he acts promptly. But, in the instant case, payment of the check was never refused. Failure to present it for payment, or to ascertain that it had not been presented, for a period of 26 days, was clearly due to the negligence of appellant himself. It was his duty to examine his bank passbook, and he was charged with notice of what it disclosed. Michie Bank and Banking, vol. 2, pp. 1100, 1258; Weinstein v. Nat. Bank, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23; Fifth National Bank of San Antonio v. National Bank of Llano, 92 Tex. 436, 49 S. W. 368; Calvin Coal Co. v. Bank (Tex. Civ. App.) 286 S. W. 901.

In purchasing the drafts with bills of lading attached from the Vest Cotton Company, appellee bank was clearly an innocent purchaser for value from one in possession of the cotton clothed with all the indicia of ownership.

Though the sale were intended as a cash transaction, a voluntary, complete, and unconditional delivery of the property, with the full knowledge and expectation that the purchaser would resell said cotton in its customary and usual order of business, and without seeing to it that he was first paid, conclusively indicates, we think, that it was the intention of the parties that title to the property should pass to the purchaser at the time of delivery. Under such circumstances Parma waived his right to reclaim said property in the hands of innocent third parties, and must rely upon his purchaser to pay him. Cox v. Early, Foster & Co. (Tex. Civ. App.) 143 S. W. 345; Williston on Sales, § 346; Kempner Grain Co. v. Harbour, 89 Kan. 824, 133 P. 565, 47 L. R. A. (N. S.) 173; 24 R. C. L. 37.

In any event, under the undisputed facts disclosed by the record, appellant was clearly estopped to assert any claim to said cotton as against the bank. Kempner v. Vaughn (Tex. Civ. App.) 174 S. W. 695; 24 R. C. L. 378, and numerous authorities there cited. His failure to act for a period of more than 20 days on the information disclosed by his bank passbook, during which time the bank had paid Vest Cotton Company for the cotton, and was thereafter unable to protect itself, clearly estopped appellant to recover against it.

We find no evidence in the record of any conspiracy between the bank and the Vest Cotton Company to cheat Parma out of the value of his cotton. Hence it was not error to refuse to submit that issue to the jury. Nor was it error to refuse to submit the issue as to whether the bank paid the Vest Cotton Company "any cash money or other thing of value" for the cotton in question. The undisputed evidence showed that Vest Cotton Company shipped out 50 and 100 bale lots at frequent intervals; that the 44 bales in question were commingled with some ten of these shipments; and that the bank credited the Vest Cotton Company's account with the amounts of the various drafts. No issue of fact was therefore presented. Whether payment to Vest Cotton Company was made by depositing to its credit the amount of the drafts, or merely crediting its debt to the bank with such amounts, is immaterial. Either method constituted the same valuable consideration and entitled the bank to the same protection. Howe Grain & Mercantile Co. v. Crouch Grain Co. (Tex. Civ. App.) 211 S. W. 946; Wichita Falls Compress Co. v. W. L. Moody & Co. (Tex. Civ. App.) 154 S. W. 1032.

There was no denial that Parma had never been paid for his cotton, and it was not necessary to submit that question to the jury. Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.