PARMA v. FIRST NAT. BANK OF
CAMERON.
No. 1389—5994.

Commission of Appeals of Texas, Section B.
Oct. 18, 1933.

W. A. Morrison, of Cameron, for plaintiff in error.

Henderson, Kidd & Henderson, of Cameron, for defendant in error.

SHORT, Presiding Judge.

The defendant in error, First National Bank of Cameron, on December 21, 1927, filed its original petition in the district court of Milam county, against the plaintiff in error, J. J. Parma for the sum of $3,218.99, alleg-,ed to be due by reason of drafts made by the plaintiff in error on said bank, and paid by ·the latter. There were two trials in the dis· trict court, the first resulting in a judgment against the plaintiff in error, in which no questions were considered except questions of law arising upon the pleadings. Upon appeal to the Court of Civil Appeals at Austin, the judgment of the district court was reversed, and the cause remanded for a trial upon the facts; the district court having sustained certain exceptions to the cross-action of the plaintiff in error, which the Court of Civil Appeals held to be error. 22 S.W.(2d) 957.

Upon this trial, the plaintiff in error admitted liability on checks given by him on the bank for cotton he had purchased from the original owners, but pleaded a counterclaim for $4,954.64, alleging failure of the bank to credit him with a check of that amount drawn by the Vest Cotton Company in his favor. In this alternative plaintiff in error pleaded a fraudulent conspiracy by the said bank and the Vest Cotton Company, whereby the bank converted 44 bales of cotton belonging to him, of the value of $4,954.64. There was a jury trial upon the issues relating to the matters set up in the cross-action only, and, upon the return of the verdict of the jury, judgment was rendered for the defendant in error for the amount sued for; the plaintiff in error having been denied any relief on his cross-action. Upon appeal to the Court of Civil Appeals at Austin, the judgment of the district court was affirmed. 37 S.W.(2d) 274, 275.

It appears without apparent dispute that the plaintiff in error was engaged in buying cotton from farmers in the neighborhood of the town of Cameron where the defendant in error conducted a banking business. He had an arrangement with the defendant in error, whereby the latter paid the holders of checks he gave for this cotton so bought from the farmers when duly presented. These checks were generally presented on the day the cotton was purchased. The Vest Cotton Company was also engaged in buying cotton in the town of Cameron, and had a similar arrangement with the defendant in error to pay its checks when duly presented. The Vest Cotton Company apparently did not buy directly from the farmers, but bought from those purchasing from the farmers, including

the plaintiff in error. The Vest Cotton Company bought 44 bales of cotton from the plaintiff in error on the 17th day of September, 1927, and in payment thereof delivered to the latter its check on the defendant in error for the sum of $4,954.64, and, upon the idea that this check represented cash, the plaintiff in error delivered to Richard Vest the warehouse receipts representing the title to these 44 bales of cotton, and at the same time redelivered the check for the cotton to Richard Vest, with the request that he present it to the bank for him for payment. Richard Vest did not deliver this check, but the plaintiff in error did not discover his failure to do so until the 13th day of October, 1927, when the defendant in error notified him that his account was overdrawn in the amount sued for. In the meantime the Vest Cotton Company procured bills of lading, with drafts attached, and had delivered them to the defendant in error who had credited the account of the Vest Cotton Company with the amount of the value of the 40 bales of cotton shipped. These 40 bales of cotton were shipped out of Cameron to other places on bills of lading long before the defendant in error had been notified that they had not been paid for, and that no title had ever passed in fact from the plaintiff in error to the Vest Cotton Company to these, which were delivered to it, by the plaintiff in error, on September 17, 1927. All the parties, that is to say, the plaintiff in error, the Vest Cotton Company, and the defendant in error, continued to have transactions with each other after September 17, 1927, until October 13, 1927, similar to those they had had previous to that time during that cotton season, involving several thousand dollars. That is to say, the plaintiff in error continued to give checks on the defendant in error for cotton he purchased from farmers, which it paid, and the Vest Cotton Company continued to give checks on the defendant in error for cotton he had purchased from the plaintiff in error and others, which checks were paid by the defendant in error upon presentation. On October 13, 1927, when the plaintiff in error, for the first time, discovered that Richard Vest had not presented his check to the defendant in error and therefore the plaintiff in error had not received any credit on the books of the defendant in error for the 44 bales of cotton, the Vest Cotton Company became insolvent, and apparently it became evident to the plaintiff in error that it could not respond in damages to him for its failure to pay for the 44 bales of cotton.

The plaintiff in error filed his first amended original answer, setting up the cross-action above mentioned, and on March 4, 1929, filed his second original amended answer, again setting up the same cross-action. In the meantime all the cotton had been shipped out from Cameron and had been placed in the hands of confessedly innocent purchasers.

On the issues presented the jury found: (1) That it was in contemplation of the parties that Parma was to have the cash on the check for $4,954.64, or credit for it at the bank for the amount of said acceptance; (2) that Parma redelivered the acceptance to Richard Vest for the purpose and with the request that he deposit same immediately to the credit of the plaintiff in error in said bank; (3) that Richard Vest did not so deposit it; (4) that said Vest did not act fraudulently at the time for the purpose of cheating Parma out of his cotton without paying him for it.

The Court of Civil Appeals, in addition to the issues found by the jury, found the following facts which are stated in this language:

"It appears that appellee bank was financing the Vest Cotton Company in purchasing and shipping cotton at Cameron during the 1927 season by paying its acceptances and charging it interest on overdrafts. Parma purchased cotton for the Vest Cotton Company for which he was paid 50 cents per bale. In purchasing same, however, he paid for it with checks on his individual account in appellee bank. Usually the Vest Cotton Company took up his cotton at the end of each day, giving him its check on appellee bank for all he had paid out that day, plus the 50 cents for each bale. Sometimes, however, Parma purchased cotton on his own initiative at prices above the day's market limit, given him by the Vest Cotton Company, such purchase being made at his own risk, and subsequently sold the cotton outright to the Vest Cotton Company.

"On September 17, 1927, Parma had on hand 44 bales purchased by him during the preceding ten days, partly on market quotations, and partly at his own risk. On that date, he sold same to the Vest Cotton Company, which delivered to him its check on appellee bank for $4,950.64 in payment therefor. He then delivered to Richard Vest, its agent, the compress receipts for the cotton. He also indorsed its check to him, and handed same, together with his bank passbook and deposit slip for the amount, back to said Richard Vest, with request that he deposit same to Parma's credit in appellee bank. This method of deposit was a common practice between them, and was an accommodation to Parma whose place of business was about a mile from the bank. The bank had nothing to do with the arrangement between Parma and the Vest Cotton Company.

"Purchases and sales in this manner continued until October 12 or 13, 1927, when the bank notified Parma that his personal account was overdrawn several thousand dollars. Parma then first discovered that he had not been given credit for the $4,950.64 check in question. Meantime most of the 44 bales had already been sold by the Vest Cotton Com-

pany, shipped out in different lots to Galveston and Houston, under bills of lading with drafts attached, drawn on the purchaser by said company, indorsed by it to appellee bank, which gave the Vest Cotton Company credit for same on its indebtedness to said bank."

It is important to note that the cross-action of the plaintiff in error consists of two inconsistent or conflicting grounds of recovery. Its main ground is to the effect that the defendant in error is liable in damages to him for the value of the cotton on account of its alleged conspiracy with the Vest Cotton Company, whereby the defendant in error converted the cotton belonging to him. The Court of Civil Appeals, on the first appeal, 22 S.W.(2d) 957, supra, among other things, held that the cross-action stated a good cause of action on this ground. The jury having found that the transaction with reference to the 44 bales of cotton, between the plaintiff in error and the Vest Cotton Company, in the contemplation of the parties, was a cash one, and the plaintiff in error not having received any cash for his cotton, the title thereto did not pass from him into the Vest Cotton Company, and as between the plaintiff in error and the Vest Cotton Company, the latter acquired no ownership, because it had not paid the plaintiff in error therefor. Lang et al. v. Rickmers, 70 Tex. 108, 7 S. W. 527; Denny v. White House Lbr. Co. (Tex. Com. App.) 54 S.W.(2d) 86. But the Vest Cotton Company is insolvent, and is not a party to this suit, and furthermore the cotton has passed into the hands of confessedly innocent parties. Had the plaintiff in error introduced any testimony whatever of a substantial nature in support of its allegation of conspiracy between the defendant in error and the Vest Cotton Company, then it would have been the duty of the trial court to have submitted that issue to the jury, and if the jury had found the allegations to be true, then the defendant in error would be equally liable to the plaintiff in error with the Vest Cotton Company for the value of the cotton converted, but the Court of Civil Appeals found, and there is no serious contention that the finding is not supported by the record, that the plaintiff in error did not support its allegation of conspiracy with any substantial testimony, and so that ground of recovery is eliminated, especially in view of the further findings of fact by the Court of Civil Appeals that the plaintiff in error, at the time he received the acceptance from the Vest Cotton Company, delivered to Richard Vest the said check or acceptance of the Vest Cotton Company drawn on the defendant in error to be delivered to the latter immediately, and that had it been so delivered the plaintiff in error would have received a credit on the books of the latter.

The Court of Civil Appeals also finds as a fact that at the same time the check of acceptance was delivered by the plaintiff in error to Richard Vest, as aforesaid, the former delivered to the latter, for the Vest Cotton Company, the warehouse receipts for the 44 bales of cotton. The Court of Civil Appeals also finds as a fact that the defendant in error paid to the Vest Cotton Company the market value of the cotton, and being free from any wrongdoing, and without knowledge of the wrongdoing of the Vest Cotton Company, the defendant in error stood in the relation of an innocent purchaser as to said cotton, so long as the fact that the Vest Cotton Company had not paid for the cotton was unknown to it. The record, however, discloses without contradiction that while the defendant in error had paid for 40 bales of said cotton by crediting the Vest Cotton Company with the value thereof, and has shipped said 40 bales of the cotton to other purchasers, who were confessedly innocent of any wrongdoings, and had received pay therefor, yet as to 4 bales of the cotton the defendant in error had not so shipped and sold the same before it acquired knowledge of the fact that the Vest Cotton Company had not paid the plaintiff in error therefor. As to the 40 bales of cotton which had been shipped from Cameron and delivered to other parties for value, without notice by the defendant in error as aforesaid, we think the following language of the Court of Civil Appeals is applicable: "Parma knew at the time said company was only a local buyer; that it also contemplated shipping out cotton so handled; that this cotton would, in the usual course of business, probably be resold and shipped out of Cameron within a few days, and that such was the only purpose for which the Vest Cotton Company purchased it; 40 bales of it were commingled with and shipped out in six different shipments prior to October 1 * * * there was nothing in any of these shipments to indicate that the cotton here involved had not been paid for; nor to identify the cotton in question as being purchased from Parma. That company had possession of the cotton with all the indicia of ownership, and it was handled in the same manner that thousands of other bales were handled by the same parties through appellee bank." In other words, we think that the Court of Civil Appeals correctly held that when Parma delivered the compress receipts to the Vest Cotton Company, on September 17, 1927, it was intended as a delivery of the possession of the cotton itself. In so doing he invested the purchaser with the full power to dispose of it and make delivery to a subsequent purchaser. The plaintiff in error, having voluntarily made unconditional delivery of the cotton to the Vest Cotton Company by delivering the warehouse receipts therefor, must be held to the logical and legitimate consequences of his acts in so doing so far as third parties are concerned, who were innocent of any wrongdoing. The plaintiff in error, in delivering the warehouse receipts for

the cotton to the Vest Cotton Company, enabled the latter to appear to innocent third parties as the real owner of the cotton with full power to dispose of it for value upon the market, and the Vest Cotton Company having so disposed of the cotton to the extent of 40 bales, the plaintiff in error is bound by the consequences of his own voluntary acts. This is especially true in view of the facts shown by the record, that the plaintiff in error did not attempt to notify third parties, including the defendant in error, that the Vest Cotton Company had obtained these warehouse receipts under such circumstances as to nullify the apparent ownership of the cotton in the Vest Cotton Company to the cotton, to the extent of 40 bales thereof. The plaintiff in error himself, with reference to the form of these warehouse receipts, testified as follows: "The form I think is that anyone could take the compress receipt to the compress and receive the actual bale of cotton it called for. The way I understand it is the delivery of the cotton is through the delivery of compress receipts. The compress receipts were delivered to me and I in turn would deliver the compress receipts to the Vest Cotton Company when they took up the cotton. In this instance on September 17, 1927, when Richard Vest was down there to take up this bunch of cotton and gave me the $4,950.64 check for it I delivered to him the compress receipts for the bales of cotton that I was selling him. When I delivered the compress receipts to him that was giving him possession so far as I knew of the cotton itself. I think he could have taken the receipts over to the compress and got the cotton. * * * I knew in a general way when I turned over the compress receipts to the Vest Cotton Company how they would handle and dispose of the cotton —I suppose it in turn would sell to some other cotton concern. * * * As a general rule I would deliver the cotton to them in the evening that I had bought through the day. I think they would in turn sell to some concern at Galveston or Houston or some other point. * * * I suppose they would sell the cotton they took up from me to some other concern, but I don't know just what they did with it. I suppose they would ship it unless they sold it locally. I suppose that was my general understanding. I do not know of any difference in the way they handled this cotton than the other cotton they bought from me."

Appellant further testified: "I had been selling cotton to the Vest Cotton Company during that season beginning about the first of August. I knew the Vest Cotton Company was not holding the cotton, but was shipping it away from here (Cameron) during the season. I knew when I delivered the receipts to Richard Vest that the Vest Cotton Company was shipping cotton out of Cameron all along. I knew also when I delivered the compress receipts that that was the same as a delivery of the cotton. I knew when I turned the receipts over to the Vest Cotton Company that they could at once sell that cotton and ship it away by delivering the compress receipts to the compress."

This testimony, in view of article 5609, R. S. 1925, conclusively shows the defendant in error to have become the actual and exclusive owner of at least 40 bales of this cotton, since that article prescribes that "a negotiable receipt issued against goods or products stored in a warehouse * * * shall be negotiable and transferable by endorsement in blank," and, further, that "the transferee or holder of such warehouse receipt shall be considered and held as actual and exclusive owner, to all intents and purposes, of the property therein described." According to this testimony of the plaintiff in error, the construction placed by him upon these receipts, which he delivered to the Vest Cotton Company, was in accordance with the provisions of article 5609, supra.

The rule of law applicable to such a condition of affairs, as is related by the plaintiff in error in the above testimony, may be stated in the following language: "When one of two persons, equally entitled to consideration as far as their purposes are concerned, must suffer from the delinquency of a third, the loss more properly falls upon him, who having readily at hand the means of protection, has failed to avail himself of them."

The theory of the plaintiff in error, exclusive of the theory of conspiracy, is that the transaction between himself and the Vest Cotton Company, being a cash one, no title of the cotton passed from him to the Vest Cotton Company, and as the Vest Cotton Company acquired no title, any purchaser from the latter would acquire none. That is a correct theory broadly stated, but is not applicable to the facts in this case, because the plaintiff in error invested the Vest Cotton Company with every indicia of ownership thereof, by unreservedly and voluntarily delivering to the Vest Cotton Company the warehouse receipts, which the plaintiff in error, in his testimony, declares to be the evidence of ownership. Furthermore, it appears that the Vest Cotton Company used these warehouse receipts in exactly the same way that the testimony of the plaintiff in error shows he contemplated they would be so used, and that the ultimate result of this use was damage to himself, as well as to others, and applying the rule of law above stated, as to who must suffer under such circumstances, it follows that the plaintiff in error must suffer to the extent of the value of 40 bales of cotton disposed of by the Vest Cotton Company, to the defendant in error, without notice of the fact that the Vest Cotton Company had not paid the plaintiff in error therefor, and therefore the title of the plaintiff in error had not passed

out of him and the ownership remained in him.

The Vest Cotton Company, under the facts of this case, acquired no title to the 44 bales of cotton by virtue of the delivery of the compress receipts delivered by the plaintiff in error to Richard Vest. One who has not performed a condition precedent, which in this case was the payment by the Vest Cotton Company to the plaintiff in error of the former's draft drawn on the defendant in error in favor of the plaintiff in error, is not protected by the possession of the compress receipts, evidencing the title to the cotton under the provisions of article 5609, R. S. 1925, because the transaction was a cash one, and the Vest Cotton Company had never paid for the cotton. Gose v. Brooks (Tex. Civ. App.) 229 S. W. 979 (writ of error refused). The owner of personal property, who is induced by fraud, as the plaintiff in error was induced in this case, to part with the possession, but not the title, of his goods, may recover them even from one who has paid value for them without notice of the owner's rights; but if the owner be induced to sell the goods, as the plaintiff in error was induced in this case to do, parting with the title as well as possession by the fraud of another, he cannot recover them from a bona fide purchaser for value into whose hands they have passed by the vendee. Rohrbough v. Leopold, 68 Tex. 254, 4 S. W. 460. This is true, notwithstanding the fact that where the terms of the sale of personal property are cash on delivery, concurrent payment upon delivery is essential to pass the title, and in the absence of an estoppel the vendor may retake the property in the hands of an innocent purchaser for value. Menke v. First National Bank (Tex. Civ. App.) 206 S. W. 693 (writ of error refused). Where drafts with bills of lading attached were purchased by a bank, as was done by the defendant in error in this case, from a consignor of merchandise for value and without notice of fraud, have been fully paid by the consignee or consignees, the bank is not liable to any one injured by the transaction for any fraud perpetrated by the consignor in making out the bills of lading. Blaidsell, Jr., Co. v. Citizens' National Bank, 96 Tex. 626, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944; Howe Grain Co. v. A. B. Crouch (Tex. Civ. App.) 211 S. W. 946 (writ of error refused).

In this case the defendant in error sued the plaintiff in error upon an action of debt for moneys had and received by the plaintiff in error from the defendant in error. The amount of these moneys was admitted to be correct by the plaintiff in error, but the latter alleged that by virtue of certain transactions, in which the Vest Cotton Company participated, the defendant in error owed the plaintiff in error a sum of money in excess of that claimed by the defendant in error. The result of the trial of the case was in effect a denial of the counterclaim plead by the plaintiff in error, and consequently there was nothing else for the court to do except to render a judgment in favor of the defendant in error for the amount sued for. However, it appears that under the facts shown without controversy the defendant in error did not pay the Vest Cotton Company for 4 bales of the 44 bales of cotton until after the defendant in error had been notified that the Vest Cotton Company had not paid the plaintiff in error for these 4 bales, as well as the circumstances under which the Vest Cotton Company became vested with the apparent title thereto, and that afterwards the defendant in error did pay the Vest Cotton Company for these 4 bales, with notice of the facts above related, in consequence of which the defendant in error, as to these 4 bales of cotton, was not a bona fide purchaser for value and under these facts, which were shown to be true, it became liable to the plaintiff in error for the value thereof, and the latter became entitled to a judgment against the former for the value of said cotton.

We therefore think the Court of Civil Appeals was correct in affirming the judgment of the trial court, for the reasons above stated, to the extent of the value of the 40 bales of cotton, which the evidence shows had been delivered by the Vest Cotton Company to the defendant in error for value without notice of the rights of the plaintiff in error to said 40 bales of cotton; but the evidence also shows beyond dispute that the defendant in error was notified by the plaintiff in error that as to 4 bales of the cotton the Vest Cotton Company had acquired possession of the apparent title thereto without paying therefor, under such circumstances as to show that the title as to the 4 bales, resting in the plaintiff in error, had not passed from him to the Vest Cotton Company, and after having received notice of these facts, the defendant in error paid the Vest Cotton Company for said 4 bales of cotton and appropriated the value thereof to its own use.

The value of these 4 bales of cotton is shown by the record, without dispute, to have been, on September 17, 1927, the sum of $429.25, the date when the plaintiff in error wrongfully parted with the possession of said 4 bales and from which date the plaintiff in error became entitled to recover from the defendant in error said sum of $429.25, together with 6 per cent. interest from that date until the 12th day of October, 1927, which was the date when the defendant in error demanded of the plaintiff in error the amount sued for. Deducting from this amount, for which the defendant

in error sued, to wit, $3,218.99, the value of said 4 bales of cotton, together with 6 per cent. interest thereon, from the 17th day of September, 1927, to October 13, 1927, at the rate of 6 per cent. interest per annum, we have the sum of $2,801.05, the amount which the plaintiff in error owed the defendant in error on said date, October 13, 1927, with interest thereon at the rate of 6 per cent. per annum up to the present date, to wit, $1,008.37, which amounts to the sum of $3,809.42, and judgment for which defendant in error is entitled against the plaintiff in error.

We recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and that judgment be rendered by the Supreme Court in favor of the defendant in error against the plaintiff in error for said sum of $3,809.42. We further recommend that judgment be rendered against the defendant in error for all costs incurred in all the courts.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered as recommended by the Commission of Appeals.

made in vacation, in which the application of Jake McKinney for discharge or relief by way of habeas corpus was denied.