**LANE WOOD & COMPANY et al.,**
**Appellants,**

v.

**CONTINENTAL OIL COMPANY et al.,**
**Appellees.**

**No. 349.**

Court of Civil Appeals of Texas.

Tyler.

July 11, 1968.

Rehearing Denied Sept. 19, 1968.

Ungerman, Hill, Ungerman & Angrist, Vernon O. Teofan, Dallas, for appellant Lane Wood & Co.

M. G. Davis, Amarillo, for appellant Hugh Montgomery, trustee in bankruptcy for Allied Supply Co., Inc.

Culton, Morgan, Britain & White, Neal R. Allen, Amarillo, for appellee Continental Oil Co.

Hardie, Grambling, Sims & Galatzan, El Paso, Underwood, Wilson, Sutton,

Heare & Berry, R. A. Wilson, Amarillo, for appellee Western Gas Service, Inc.

MOORE, Associate Justice.

Plaintiff, Continental Oil Company, successor of Carlon Products Corporation, instituted this suit against Allied Supply Company, Inc., and its president, G. R. Campbell; Lane Wood & Company; and Western Gas Service Company, to recover the possession of certain plastic pipe, or in the alternative, for the agreed price of the pipe which Carlon sold to Allied and which Allied, in turn, sold to Western. For convenience, the parties will hereinafter be referred to as "Continental," "Carlon," "Allied," "Lane Wood," and "Western."

Continental alleged by its original petition that on December 8, 1964, Allied placed an order with Carlon, a wholly owned division of Continental, for certain plastic pipe; that when Allied ordered the pipe, Allied instructed Carlon that the pipe was to be shipped to Allied's customer, Western, at Texhoma, Oklahoma; that prior to the sale Carlon insisted that the sale be made upon a cash basis. As a result, Allied issued Carlon its check in the amount of $21,606.74, which was accepted by Carlon's agent, Sullivan, in Amarillo, and mailed to Carlon's home office in Cleveland, Ohio. Thereafter, Carlon delivered the pipe to Allied at its Corsicana, Texas, plant and Allied delivered same to Western at Texhoma, Oklahoma. Carlon promptly deposited Allied's check in its bank in Ohio. When the check was presented to Allied's bank in Amarillo, the bank dishonored same because of insufficient funds. Continental further alleged that Allied was without funds to pay the check and as a result of the fraud which Allied had perpetrated upon it by issuing the worthless check, title to the pipe did not pass and therefore Continental was entitled to a return of the pipe or, in the alternative, was entitled to recover the sum of $21,606.74, together with attorneys' fees.

Continental's petition further recited that Lane Wood was joined as a party to the suit because of the fact that it was asserting some interest in the account owed by Western; that Western was withholding payment for the pipe and was willing to pay the same to the party entitled thereto. The prayer was for a recovery of the pipe, or, in the alternative, for judgment against all defendants for the sum of $21,606.74. Continental specifically requested that such sum be paid to it from the fund then being withheld by Western. The petition was filed on January 7, 1965.

Shortly thereafter, on January 18, 1965, a petition of involuntary bankruptcy was filed against Allied in the United States District Court for the Northern District of Texas. On June 26, 1965, Continental filed its sworn proof of claim in the bankruptcy proceedings asserting that it held an account against Allied for the sum of $21,606.-74, and recited generally the same facts set forth in its pleadings in the present cause. The claim specifically stated that the account was unsecured except for the written guarantee of G. R. Campbell.

Subsequently on January 29, 1965, Western answered in the present cause by filing a Bill of Interpleader, in which it acknowledged the indebtedness, and alleged that since it was unable to determine with safety to whom payment should be made, the agreed price of the pipe in the amount of $24,080.32 was being tendered into the Registry of the Court. Western prayed for a discharge of any and all liability and for reasonable attorneys' fees in the amount of $1,500.00. By agreement of all parties, the impleaded funds were deposited in the Panhandle Savings & Loan Association, at interest.

Defendant Lane Wood answered Continental's petition with a general denial and a cross-action. In its cross-action, Lane Wood alleged that by a written agreement dated September 29, 1964, Allied had assigned all of its accounts receivable, both past and future, to Lane Wood and also by

a factor's lien agreement dated October 12, 1964, Allied had given Lane Wood a lien upon all of its assets, including accounts receivable; that Allied was in arrears with its payment to Lane Wood in excess of $40,000.00 and by virtue of the assignment of accounts receivable, Lane Wood was entitled to the account owed by Western. Lane Wood further alleged that if a cash sale was agreed upon, Continental waived its right to insist that title did not pass by delivering the pipe to Allied knowing that Allied was to transfer title to Western and that by filing its claim in the bankruptcy proceedings, Continental submitted to the jurisdiction of the bankruptcy court and by electing such remedy, waived its right to be heard in the present cause. Lane Wood prayed for the entire amount deposited by Western by reason of its assignment of accounts receivable from Allied.

Prior to trial, Hugh Montgomery, Trustee in Bankruptcy, intervened and sought judgment for the funds on deposit in the Registry of the Court. He alleged first that Continental's claim to the funds was that of unsecured creditor for the reason that the sale from Carlon to Allied was not a cash sale, but was nothing more than a sale on credit and as a result, Continental occupied the position of an unsecured creditor. Secondly, he alleged that Continental, by filing a verified claim in the bankruptcy proceedings, elected its remedy to pursue the claim in the bankruptcy preceedings and therefore waived its right to the title of the pipe or the value thereof. His petition further asserted that the bankruptcy court, by operation of law, was vested with title to all assets of the bankrupt Allied on January 18, 1965, the date of the petition in bankruptcy. He prayed for judgment for the entire fund, free and clear of any and all claims.

By an amended pleading, Continental abandoned its claim against Western for possession of the pipe. It also appears that Continental abandoned its prayer for judgment against Allied and sought only a

recovery from the funds deposited into the Registry of the Court.

After a trial before the court without a jury, the trial court rendered judgment distributing the funds on deposit, as follows:

(1) A sum sufficient to pay all costs of suit, including $750.00 as attorneys' fees for Western Gas to be paid to the District Clerk in payment for court costs.

(2) The sum of $2,473.58 to be paid to the Trustee in Bankruptcy in full satisfaction of his claim on behalf of the estate of Allied.

(3) All remaining fund up to the extent of $21,606.74, together with an attorney's fee in the amount of $2,160.67, to be paid to Continental in full satisfaction of its claim; and

(4) That Lane Wood take nothing.

From this judgment, Lane Wood, and Hugh Montgomery, Trustee in Bankruptcy, duly perfected this appeal.

At the request of Lane Wood, the trial court filed extensive findings of fact and conclusions of law. Among other things, the court found that Carlon, by and through its agent Sullivan, advised Allied that it would not sell pipe to Allied except on a C.O.D. basis and that it must have payment for such pipe before the same could be delivered; that Allied delivered Sullivan its check for $21,606.74 which, when the same cleared the bank, was to have constituted payment for the pipe; upon receipt of the check by Carlon at its home office, Carlon caused its plant in Corsicana, Texas, to deliver such pipe to Allied's trucks at Texarkana, Texas, for transportation to Western at Texhoma, Oklahoma; that said pipe was transported by Allied's truck to the above destination; that Carlon promptly deposited Allied's check in the bank for collection. When same was presented to Allied's bank, payment was refused because of insufficient funds; at all pertinent times, Allied had in effect with Lane Wood an

assignment of accounts receivable and factor's lien and agreement, duly filed in Potter County, Texas.

Based on the foregoing findings of fact the trial court concluded that (1) the agreement between Carlon and Allied was for a cash sale of the pipe; (2) the check given by Allied to Carlon was to have constituted payment for the pipe when honored at Allied's bank; (3) since payment on said check was dishonored, no payment for said pipe has ever been made, the title thereto did not pass from Carlon to Allied; (4) since Allied never acquired title to the pipe in question, neither the assignment of accounts receivable nor its factor's lien granted to Lane Wood ever became effective or operative to pass any interest in the pipe or any accounts supposedly arising thereon to Lane Wood; (5) Western, having received and used the pipe, owed and still owes Carlon therefor; (6) Continental is not estopped by any action which it has taken or failed to take in connection with the transaction utilized in this suit and has not waived its rights herein; (7) the filing of the claim in bankruptcy against Allied did not constitute an election of that remedy over the remedy here pursued.

By numerous points of error, Lane Wood asserts that the judgment in favor of Continental and the Trustee in Bankruptcy is erroneous in that the trial court's finding that a cash sale of the pipe was intended and that no title passed to Western, is without support in the evidence. Alternatively, Lane Wood asserts that the judgment is against the overwhelming weight and preponderance of the evidence. It is Lane Wood's contention that the undisputed facts show that Carlon intended that title pass to Allied at the time of delivery and therefore Lane Wood became entitled to Allied's accounts receivable from Western for the agreed price of the pipe by virtue of its prior assignment from Allied. Alternatively, Lane Wood says that even though Carlon sold the pipe to Allied on a cash basis, Carlon, by its subsequent acts and conduct, waived its right to insist upon a cash sale.

Appellant, Hugh Montgomery, Trustee in Bankruptcy, likewise contends that title passed to Western and that Carlon is a mere unsecured creditor of Allied and therefore, he, as Trustee, became entitled to the account receivable which Western owed Allied.

The controlling question is whether Carlon intended to sell the pipe upon the condition that title would not pass until the check was paid, and if so, whether such condition was waived.

■ The well recognized rule of this state is when a sale is made for cash and payment is by check, title to the chattels sold do not pass until the check is honored by the drawee bank, the payment by check being presumed to be a conditional payment. Lang v. Rickmers, 70 Tex. 108, 7 S.W. 527; Continental Bank & Trust Co. v. Hartman (Tex.Civ.App.) 129 S.W. 179, n. w. h.; Valley Stockyards Company v. Kinsel, Tex., 369 S.W.2d 19. The presumption, however, is not conclusive but may be rebutted.

In Valley Stockyards Company v. Kinsel, supra, the court said:

"* * * In a transaction where a check is given in exchange for property, the title received by the purchaser is not necessarily conditioned upon the checks being paid by the bank upon which it is drawn. The cases speak of a check being delivered unequivocally. This means that the property was sold unconditionally with the understanding that the title should then pass. This understanding or intention may be shown not only by direct evidence but may be inferred from circumstances giving rise to a reasonable inference that title was to pass upon delivery of the property."

■ It seems to be well settled that a seller may waive payment of the check as a condition precedent to passage of title.

In that event, title ordinarily passes upon delivery. Whether or not the seller has waived payment depends upon the facts and circumstances and is usually a question of fact. Continental Bank & Trust Co. v. Hartman, supra; Kempner v. Vaughn (Tex.Civ.App.), 174 S.W. 695; Parma v. First Nat. Bank of Cameron, 37 S.W.2d 274, revd. on other grounds, 63 S.W.2d 692.

The evidence surrounding the sale of the pipe is, to say the least, vague and confusing. As we understand the record, at the time Allied ordered the pipe from Carlon, it was heavily indebted to Carlon and had exceeded its credit limits. Carlon, being concerned about the account, advised its agent, Sullivan, to contact Allied and advise them that the pipe would have to be paid for in cash unless Allied brought its account to a current basis. Sullivan testified that his company told him to get "a check." Campbell, Allied's president, testified that he agreed to give Sullivan a check. The check, which was subsequently delivered to Carlon, was in the amount of $21,606.74. The testimony however fails to show whether or not the check was in the same amount as the purchase price. Neither Sullivan nor Campbell could remember the agreed price of the pipe. Continental did not offer any of its invoices nor did it offer any other evidence as to the agreed price. Sullivan testified that when he picked up the check, he assumed that it was for the amount of the purchase price. Campbell was able to remember instructing his bookkeeper to draw a check, but could not remember the amount thereof. Allied's bookkeeper failed to remember any of Campbell's instructions in connection with the check. At any rate the bookkeeper testified that prior to the time the check was delivered to Sullivan, he made up a list of the past due invoices and ascertained the amount thereof. After ascertaining the amount of the past due invoices, he deducted the sum of $3,000.00 which had been paid thereon on the day before, and arrived at a balance of $21,606.74. He then made out a check dated December 9, 1964, in the amount of $21,606.74, which was the exact amount of the unpaid invoices, and attached a list of the invoices to the check. Near the left-hand corner of the check there was printed this notation: "By endorsement this check when paid is accepted in full payment of the following acount:". Immediately below this notation the bookkeeper inserted the following: "Per attached list." As we understand his testimony, the check was prepared and delivered in payment of the past due invoices. Sullivan admitted that the check had some papers attached to it when he accepted it. He testified however that he did not notice what they were and that he detached the same prior to the time he mailed the check to the home office on December 9, 1964. He testified that he had been unable to find the papers, and as a result, they were not produced at the trial.

The evidence further shows, without dispute, that at the time Sullivan picked up the check, both Sullivan and Carlon knew that Allied had received an order from Western and had agreed to sell Western the identical pipe in question and knew that same would be sold to Western immediately after it came into Allied's possession.

The record further shows on December 11, 1964, and December 14, 1964, prior to the time the check was presented to the bank for payment, Carlon delivered the pipe to Allied at its plant in Corsicana, Texas, and Allied immediately delivered same to Western at Texhoma, Oklahoma, by trucks supplied by Allied. Western received the pipe and receipted for it on Allied's delivery receipt forms. At the time the pipe was delivered to Allied, it was delivered under open and unrestricted bills of lading showing Western as the consignee. Carlon also delivered to Allied three packing lists which stated that Carlon had sold the pipe to Allied and shipped it to Western at Texhoma, Oklahoma. Two of said packing lists contained the words "Terms: 2% ten days—net 30 days." Allied subsequently billed Western for the price of the pipe. Subsequently, Allied's check to Carlon was presented to the Ama-

rillo bank for payment and was returned with the notation "Insufficient funds." Carlon made demand on Allied to make the check good and on January 7, 1965, filed this suit.

■ We recognize the well-settled principle that an appellate court in determining the propriety of a judgment must view the evidence in a light most favorable to the prevailing party, and if there is any evidence of probative force to support the judgment, it will not be disturbed. In view of this rule, we have no authority to reverse the judgment of the trial court unless it conclusively appears, as a matter of law, that (1) Carlon intended an unconditional sale, or (2) if it did not, it subsequently waived its right to insist that the sale was conditional.

We have concluded that the undisputed evidence is such that the judgment must be reversed and rendered for the following reasons.

■■ In the first place, we fail to find any evidence of a cash sale. As we view the evidence, the check in the amount of $21,606.74 was not a check for the purchase price of the pipe, but was in payment of the past due invoices. There is no evidence in the record showing the purchase price of the pipe and therefore the check could not have been in payment for the pipe unless the purchase price happened to be exactly the same as the past due invoices. We think the evidence was such as to conclusively show that at the time Sullivan accepted the check, he knew, or should have known, that the check was not a check for the purchase price of the pipe, but was a check which was specifically restricted to the payment of past due invoices. The check, together with the list of invoices attached thereto, so stated. Thus, if the check was restricted to the payment of past due invoices, Continental's claim that the pipe was sold on a cash basis is without foundation in fact. Certainly Carlon was not authorized to apply the check upon the purchase price of the pipe

because of the well settled rule that a debtor may designate the debt to which a payment is to be applied. Carlon was required to apply the check as directed by Allied to the past due invoices. 44 Tex.Jur.2d, Payment, Sec. 36.

While there was testimony to the effect that the bookkeeper actually had no authority to restrict the check to the payment of past due invoices, the fact remains that he did so, and Sullivan, as the agent of Carlon, accepted the check under those conditions. Moreover, there is nothing in the evidence showing that Sullivan, at the time he accepted the check, either knew or had any reason to believe that the bookkeeper was without authority to restrict the check. That fact seems to have been first developed at the trial. It thus appears that although Sullivan may have originally requested a check in payment for the pipe, his subsequent conduct in accepting the check in payment on the account conclusively shows that Carlon did not intend to treat the transaction as a cash sale.

■ Secondly, even though the evidence should be deemed sufficient to raise the issue of a cash sale, we think the conduct of Carlon in making a voluntary, complete and unconditional delivery of the pipe with the full knowledge that Allied had already contracted to sell the same to Western, without seeing to it that it was first paid, conclusively indicates that Carlon intended that the title pass to Allied so that Allied could, in turn, pass title to Western. As we view the evidence, Carlon not only consented to allow Allied to re-sell the pipe, but also assisted Allied in placing title in Western. The evidence show without dispute that when Carlon turned the pipe over to Allied, it did so under unrestricted bills of lading showing Western as the consignee. Such conduct, we think, conclusively shows that Carlon, when it delivered the pipe to Allied, intended to relinquish its property right in the pipe and therefore waived its right to insist upon payment as a condition precedent to the passage of title. Consequently, title

passed from Carlon to Allied and from Allied to Western, a bona fide purchaser, and the subsequent relationship of Allied and Carlon became nothing more than debtor and creditor. Under such circumstances, Carlon would, of course, have no right to reclaim the pipe from Western nor would it have a right to assert any claim to Western for conversion. Therefore, since Carlon consented to the passage of title to both Allied and Western, Carlon has no cause of action against Western and must rely upon its purchaser for payment. Parma v. First Nat. Bank of Cameron, supra; Durant Milling Company v. Hall (Tex.Civ.App.), 284 S.W.2d 760; Luse v. Crispin Company (Tex.Civ.App.), 344 S.W. 2d 926. Allied's account receivable due from Western therefore passed to Lane Wood under its assignment and consequently Lane Wood is entitled to the funds on deposit in the Registry of the Court.

Lane Wood has also attacked the judgment on the ground that the trial court erred in awarding the Trustee in Bankruptcy the sum of $2,473.58 out of the funds on deposit, asserting that Lane Wood's right to the deposited funds is superior to that of the Trustee because of its protected assignment from Allied dated September 30, 1964, and therefore says that the undisputed evidence shows that its claim primes the claim of the Trustee by more than 100 days. We agree.

■ Under the provisions of Sec. 70 of the Bankruptcy Act, 11 U.S.C. Sec. 110, the Trustee in Bankruptcy did not become vested with the title to any of the assets of the bankrupt until the date of the filing of the involuntary petition in Bankruptcy on January 18, 1964, and was therefore subject to Lane Wood's prior assignment. As a result, all points of error asserted by the Trustee are without merit and are overruled.

Finally, Lane Wood contends that the trial court erred in ordering all costs of court to be paid out of the funds on deposit and also that the court erred in ordering the stipulated attorneys' fees awarded Western to be charged as an item of cost. We sustain both contentions.

■ The well recognized rule is that all court costs are to be adjudged against the losing party. Rule 131, Texas Rules of Civil Procedure; 15 Tex.Jur.2d, Costs, Sec. 4, page 8.

■ It is likewise well settled that the innocent stakeholder in an interpleader is entitled to attorneys' fees to be paid out of the impleaded fund. United States v. Ray Thomas Gravel Co., Tex., 380 S.W.2d 576.

While we agree with Lane Wood's contention that judgment rendered by the trial court is against the overwhelming weight and preponderance of the evidence, in view of our conclusion that Lane Wood is entitled to the funds deposited into the Registry of the Court, as a matter of law, the judgment of the trial court is reversed and judgment is hereby rendered as follows:

(1) Western Gas Service Company is hereby awarded judgment for the sum of $750.00 for reasonable attorneys' fees which said sum is to be paid out of the impleaded fund on deposit in the Registry of the Court and all claims herein asserted against Western Gas Service Company are hereby dismissed.

(2) Lane Wood & Company is hereby awarded a judgment in the sum and amount of $24,080.32 from the fund interpleaded by Western Gas Service Company, together with all interest which has accrued thereon, less the sum of $750.00 heretofore awarded Western out of said fund, and the clerk of the court below is hereby directed to pay over and deliver to Lane Wood & Company said funds.

(3) It is further ordered, adjudged and decreed that Continental Oil Company and Hugh Montgomery, Trustee in Bankruptcy, take nothing and that all costs incurred in the court below be, and the same are hereby,

adjudged against Continental Oil Company, and that the costs of this appeal be shared equally by Continental Oil Company and Hugh Montgomery, Trustee.

Reversed and rendered.