**CONTINENTAL OIL COMPANY,**
Petitioner,

v.

**LANE WOOD & COMPANY, Respondent.**

No. B–1183.

Supreme Court of Texas.

June 25, 1969.

Rehearing Denied July 23, 1969.

Culton, Morgan, Britain & White, Neal R. Allen and L. A. White, Amarillo, for petitioner.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Ungerman, Hill, Ungerman & Angrist, Vernon Teofan, Dallas, Hardie, Gramblin, Sims & Galatzan, El Paso, M. G. Davis, Amarillo, for respondent.

WALKER, Justice.

This case, as it reaches us, is a controversy between Continental Oil Company and Lane Wood & Company. Their rights turn upon whether Contintental is entitled to recover the value of certain plastic pipe sold by Carlon Products Corporation to Allied Supply Company, Inc. and by the latter to Western Gas Service Company. All of the assets of Carlon were acquired by Continental after the sales and prior to the institution of suit. Lane Wood held an assignment of accounts from, and a factor's lien agreement with, Allied. Notice of the assignment and lien agreement had been duly filed prior to delivery of the pipe.

At the conclusion of a trial before the court without a jury, judgment was rendered granting Continental the relief it sought. The Court of Civil Appeals reversed and, as between these parties, rendered judgment in favor of Lane Wood. 431 S.W.2d 625. We modify the judgment

of the Court of Civil Appeals so as to remand the cause to the trial court.

The principal questions to be decided are: (1) whether the sale by Carlon to Allied was conditioned upon payment by the latter of $21,606.74; and (2) if so, whether the condition was waived by Carlon. Carlon manufactured plastic pipe, and Allied was engaged in the general supply business in Amarillo. Allied had been a regular customer of, and at the time of the transactions that give rise to this suit was heavily indebted to, Carlon. On December 8, 1964, Western placed an order with Allied for plastic pipe to be used on a job in Oklahoma. Allied discussed the order with Carlon and was told that the pipe could not be shipped because its account was in arrears. Carlon's salesman, Sullivan, advised Allied that it "would have to pay us in cash money sufficient to cover the cost of the pipe" before delivery would be made. Sullivan was later instructed by his home office to obtain a check from Allied in the amount of $21,606.74, which he did on December 9, 1964. The evidence, which will be discussed below, shows that the check was given to cover the balance unpaid on a number of prior invoices. A few days later the pipe was delivered to Allied's trucks at Carlon's plant in Corsicana. The bills of lading showed Carlon as shipper and Western as consignee.

The check was forwarded by Sullivan to his home office in Ohio. It was dishonored when presented for payment through regular banking channels to Allied's bank in Amarillo. Carlon first called upon Allied to pay the check, and a short time thereafter Continental filed the present suit against Allied, Western, and Lane Wood. In its original petition Continental sought to recover the pipe or, in the alternative, judgment against all defendants for $21,606.74. Western admitted liability for $24,080.32, the price it had agreed to pay Allied, and deposited that amount in the registry of the court. Continental then amended and prayed for a recovery of the $21,606.74 from this fund.

On January 29, 1965, Allied was adjudged a bankrupt, and about five months later Continental filed its sworn claim for the $21,606.74 in the bankruptcy proceeding. The trustee in bankruptcy intervened in the present suit and claimed the entire fund deposited in court by Western. Lane Wood also answered and set up its assignment of accounts and factor's lien agreement. It took the position that title to the pipe passed to Allied upon delivery, that in any event Carlon waived payment of the $21,606.74 as a condition to the passage of title, and that by filing its claim in the bankruptcy proceeding Continental made an election of remedies.

Findings of fact were requested and filed. The trial court concluded, among other things: (1) that the sale from Carlon to Allied was made and performed in Texas and is governed by the law of this state; (2) that the agreement between Carlon and Allied was for a cash sale of the pipe for $21,606.74; (3) that the check was to have constituted payment for the pipe when honored by the drawee bank; (4) that since the purchase price was not paid, title to the pipe did not pass from Carlon; (5) that Continental did not waive its rights and is not estopped; and (6) that the filing of the claim in the bankruptcy proceeding did not constitute an election of remedies. Judgment was entered awarding Continental $21,606.74 plus interest and attorneys' fees. Western was allowed an attorney's fee of $750.00, and the remainder of the fund, less court costs, was ordered paid to the trustee in bankruptcy.

The trustee and Lane Wood appealed to the Court of Civil Appeals, which held: (1) that a cash sale could not have been intended by Carlon and Allied, because the evidence shows conclusively that the $21,606.74 check was not given for the purchase price of the pipe; (2) that the evidence establishes as a matter of law waiver by Carlon of payment as a condition precedent to the passage of title; and (3) that the trial court erred in awarding any of the fund to the trustee in bankruptcy.

The judgment of the trial court was modified so as to allow Western its attorney's fee in the amount of $750.00, award the remainder of the fund to Lane Wood, and divide the costs equally between Continental and the trustee.

Continental is petitioner here; the trustee did not file an application for writ of error. There is a threshold question as to whether the case is governed by the law of Texas or Ohio or Oklahoma. The statutes of both Ohio and Oklahoma provide that any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business. A similar provision is now found in Section 2.403 of our Business and Commerce Code, V.T.C.A., which had not been adopted at the time of the transactions now in question.

The trial court's finding that the sale from Carlon to Allied was made in Texas is supported by the evidence. As for the sale from Allied to Western, the order was placed with Allied's office in Amarillo by Western's office in El Paso. It directed that the pipe be shipped "best way prepaid." Allied then arranged for the pipe to be delivered to its trucks at Carlon's plant in Corsicana on unrestricted bills of lading consigned to Western at Texhoma, Oklahoma. The sale was thus arranged in Texas between parties doing business here. The pipe had not previously been in Oklahoma but was moved there solely for the purpose of making delivery to Western. Any title owned by Allied would have passed in Texas if it had elected to make delivery by common carrier rather than by its own trucks. It does not appear that Continental, Carlon, Allied or Western is a resident of Oklahoma. Lane Wood is a Texas corporation and relies on the law of this state to give priority and effect to its assignment of accounts and factor's lien agreement. Oklahoma's connection with the transaction is minimal and fortuitous, and it has no interest in the present controversy. We hold that the Texas law controls.

As pointed out by the Court of Civil Appeals, there is no documentary evidence tending to show, and none of the witnesses could recall, the price agreed upon by Carlon and Allied. It conclusively appears that the $21,606.74 is exactly the balance owing on a number of invoices covering prior purchases. The bookkeeper who prepared the check testified that he made a list of the past due invoices, ascertained the total, deducted $3,000.00 that had been paid Carlon the previous day, and made the check for the balance. His testimony is confirmed by the invoices and an attached adding machine tape showing the aggregate balance unpaid thereon and bearing the date and number of the check in the bookkeeper's handwriting.

A notation "per attached list" was made on the check, and a list of invoices was attached thereto. Sullivan testified that he assumed the check was for the purchase price of the pipe, but he admitted that some papers were attached when it was delivered to him. He did not notice what they were. The papers were detached before the check was mailed to his home office, and they were not produced at the trial. The president of Allied recalls having instructed the bookkeeper to draw a check, but he could not remember the amount. At least two of Carlon's packing lists covering the pipe contained the stipulation "Terms 2% 10 Days—Net 30 Days." This is an additional indication that Allied was expected to pay the purchase price of the pipe later.

We agree with the Court of Civil Appeals that the evidence shows as a matter of law that the check was given to cover the balance owing on past due invoices. It is true that the check was issued in connection with the sale, and Sullivan assumed that it was for the purchase price of the pipe. In view of the other facts con-

clusively established by the evidence, however, these circumstances are not enough to support a finding that the check was to have constituted payment for the pipe. We are satisfied that the parties did not intend a "cash sale" or a "C.O.D. sale" as those terms are generally understood, but it does not necessarily follow that title passed from Carlon to Allied.

■■■ The evidence will support a finding that the sale and delivery were conditioned upon the payment of $21,606.74 by Allied. If that was the agreement, title would not pass until the payment was made unless the condition was waived. See Lang v. Rickmers, 70 Tex. 108, 7 S.W. 527. The fact that the check was to be applied on past due invoices does not, therefore, entitle Lane Wood to recover as a matter of law.

When Carlon made delivery to Allied, it knew the latter had contracted to sell the pipe to Western. The pipe was delivered to Allied's trucks on unrestricted bills of lading showing Western as the consignee. The Court of Civil Appeals concluded that these circumstances establish, as a matter of law, waiver by Carlon of payment as a condition to the passage of title. As previously indicated, the trial court found that Carlon was not estopped and had not waived any of its rights.

■■■ Waiver is ordinarily a question of fact, and mere delivery with knowledge that the buyer expects to resell does not establish waiver as a matter of law. In Lang v. Rickmers, 70 Tex. 108, 7 S.W. 527, the buyer was allowed to go into possession of the stock of goods and begin making sales therefrom. Whether delivery was made with the intention of waiving the condition was held to be a question of fact for the jury. In this instance, Carlon insisted upon being paid $21,606.74 and obtained Allied's check for that amount, before the pipe was delivered. It does not conclusively appear that Carlon accepted the check unequivocally. See Valley Stockyards Co. v. Kinsel, Tex.Sup., 369 S.W.2d 19. The check was promptly deposited; upon learning that it had been returned by the bank, Carlon promptly notified Western to withhold payment. Suit for recovery of the pipe was filed about two weeks later. Cf. Victor Safe & Lock Co. v. Texas State Trust Co., 101 Tex. 94, 104 S.W. 1040. It is our opinion that in view of these facts, the circumstances relied upon by the Court of Civil Appeals are not enough to show waiver as a matter of law.

The cases upon which Lane Wood relies are to be distinguished. Delivery with knowledge that the buyer would probably resell was only one of the circumstances in Menke v. First National Bank, Tex.Civ. App., 206 S.W. 693 (wr. ref.). The seller in Durant Milling Co. v. Hall, Tex.Civ. App., 284 S.W.2d 760 (wr. ref. n. r. e.), did not sue for the property but attempted to prevent payment, and recover the amount, of a check issued by an innocent purchaser to the buyer. Other than the claim that the property was obtained by theft or fraudulent pretenses, there was no contention in the application for writ of error that title had not passed to the buyer. In Luse v. Crispin Co., Tex.Civ.App., 344 S.W.2d 926 (wr. ref. n. r. e.), the court concluded that the facts showed a credit sale as a matter of law and that the seller was estopped to claim title against a bona fide purchaser for value. The bank in Parma v. First National Bank, Com.App., 63 S.W.2d 692, was treated as a bona fide purchaser with respect to 40 bales of cotton for which it had given value without notice but was held liable for the value of four bales on which drafts were paid after learning the true facts.

■■■ Delivery of goods to a buyer who is clothed with indicia of ownership may give rise to an estoppel against the seller. Since Western did not pay for the pipe before receiving notice, it is not a bona fide purchaser for value. See Tillman v. Heller, 78 Tex. 597, 14 S.W. 700, 11 L.R.A.

628. Estoppel is not established as a matter of law here, because it does not conclusively appear that either Western or Lane Wood made a detrimental change of position in reliance on anything that Carlon did or failed to do. As for Lane Wood's contention that filing the claim in bankruptcy constituted an election of remedies, it must be remembered that the check was given to cover past due invoices. Subsequent demands for its payment and filing the claim are not inconsistent with assertion of title to the pipe. Filing of the claim did not constitute an election of remedies.

 The fund deposited by Western stands in lieu of the pipe. Continental's rights in this fund are to be determined as though it were suing Western for the pipe or its value. It is not entitled to recover the amount of the check *as such* out of the fund. Continental is an unsecured creditor with respect to the check, the indebtedness it was issued to cover, and any attorneys' fees that may be owing by Allied under Article 2226, Vernon's Ann.Tex.Civ.Stat. Assuming that Continental had, and could assert, title to the pipe when suit was instituted, it does have a prior right as against Lane Wood to recover the value of the pipe, but not attorneys' fees or the amount of the check as such, out of the fund.

The trial court's judgment is based, in the last analysis, upon the findings that a cash sale was intended and that the $21,-606.74 check was to have constituted payment for the pipe. Since there is no evidence to support these conclusions, the judgment in favor of Continental cannot be permitted to stand. It is evident, however, that the case was tried on the wrong theory and that the cause should be remanded for another trial in the interest of justice.

The judgment of the Court of Civil Appeals is accordingly modified so as to order that the cause be remanded to the district court for a new trial, and its judgment as so modified is affirmed.